**MTRUST CORP. N.A., Trustee Under the Will of Birdie Gowin Wright, Deceased, Appellant,**

**v.**

**LJH CORPORATION, Appellee.**

No. 2–90–222–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 11, 1992.

Rehearing Overruled Sept. 30, 1992.

Kenneth J. Kramer, Wicita Falls, Anne Gardner, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellant.

J.S. "Sandy" Freels, Freels & Johnston, Sherman, for appellee.

Before JOE SPURLOCK, II, LATTIMORE and DAY, JJ.

## OPINION

JOE SPURLOCK, II Justice.

This is an appeal by MTrust Corp., N.A., Trustee ("MTrust") from the directed verdict and judgment in its suit against LJH Corporation ("LJH") for breach of contract to purchase real estate. Appellant brings fifteen points of error by which it challenges the court's findings that: the contract was not enforceable under the Statute of Frauds; no valid offer to purchase was made by LJH; an exhibit attached to the contract was not signed; there were controverted issues of fact; there was no valid acceptance of LJH's offer; LJH's claim of lack of capacity to convey was waived; and the pleadings and proof did not support the recovery by LJH of its deposit, pre-judgment interest and attorney's fees. We reverse and remand.

MTrust brought suit as trustee under the will of Birdie Gowin Wright for damages resulting from the alleged breach by LJH of a contract to purchase a parcel of ranching and farming land in Clay County, Texas, known as the "Joy" place. LJH counterclaimed for recovery of its initial deposit of earnest money, plus interest, damages for violation of the Texas Deceptive Trade Practices Act, and additional damages and attorney's fees. A trial was to a jury. After both parties had rested, the trial court granted an instructed verdict.

 It is generally stated that the plaintiff is entitled to an instructed verdict when reasonable minds can draw only one conclusion from the evidence. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978).

The task of an appellate court in such cases is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Id.* The court must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, discarding all contrary evidence and inferences. *Id.*

In withdrawing the case from the jury the court stated that it believed LJH's "MOTION TO WITHDRAW CASE FROM JURY AND TO RENDER INSTRUCTED VERDICT IN FAVOR OF RESPONDENT/CROSS–PLAINTIFF" "is well taken and the Court is going to grant the motion for the reasons set out in the motion" and further, "[t]he Court will make findings that the Court believes that each of the subparts of the ... motion are correct and those will constitute the findings of the Court." We therefore examine each of the subparts of LJH's motion in the light of the record and authorities stated in the parties' briefs.

*a. The description submitted by Plaintiff on its Invitation to Bid and its Contract for Sale of Realty was insufficient under the Statute of Frauds.*

The caption of the invitation to bid is *"WRIGHT RANCH"* followed by "Clay and Jack Counties." Following the caption, the land is described as: "This ranch consists of approximately 2,647 acres located in Jack and Clay Counties, Texas.... This ranch will be offered for sale in six (6) separate tracts. (see attached Exhibit "A" and "B")." Next are described the improvements contained in each of six (6) separate tracts numbered 1 through 6. Exhibit A lists the six tracts and approximates the acreage in each, with the explanation that tracts 1 through 4 are located approximately two miles northwest of Antelope, Texas, and tracts 5 and 6 are located between Henrietta and Jacksboro on Texas FM 148. Exhibit B consists of four pages of maps. The first page was described by Dennis Yeager as a "Heydrick" map for the Antelope place, consisting of tracts 1 through 4. The second page was a similar Heydrick map for the Joy place, which consisted of tracts 5 and 6.

The Heydrick maps, commonly used in the oil and gas industry, showed abstract numbers, survey information, and block numbers for the area where the land was located. The six tracts were separately numbered to correspond with Exhibit A, with the boundaries heavily outlined in black. The third page was a tract division map showing county roads and highways in relation to both ranches. The fourth page was a highway road map with the location of both the Antelope place and the Joy place marked by arrows. Copies of the same four maps attached to the invitation to bid were also attached to each copy of the contract of sale form contained in the bid package as Exhibit B and expressly incorporated into the contract by reference.

 To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty. *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972). A map attached as an exhibit to the contract was considered as other existing writing within the purview of the above rule in *U.S. Enters., Inc. v. Dauley*, 535 S.W.2d 623, 625–26 (Tex.1976). Lacy Harber, owner of LJH, who signed the contract as President, testified that: he had seen Heydrick maps before; he knew that they were generally used in the oil and gas business; he specifically acknowledged that he saw the two Heydrick maps which depicted the locations of the Joy and Antelope places; and that those documents, together with Exhibit A which also accompanied the invitation to bid, constituted the basis for his sending in the contracts. There was no testimony that the lands in question could not be located with reasonable certainty from the data contained in the exhibits attached to the bid and contract forms. We hold that the property description submitted by MTrust with its invitation to bid was sufficient.

*b. The Court, in reviewing the exhibits attached to the Invitation to Bid and the Sales Contract with the disputed property outlined and designated as tracts one, two, three, four, five, and six constituted the only admissible descrip-*

*tion of the property, which description is insufficient under the Statute of Frauds, V.A.T.C.S. Bus. & Com. C., Section 26.01.*

We are not certain of the meaning of this subpart, but we have held above that the property description submitted by MTrust with its invitation to bid was sufficient to describe the property being offered for sale.

*c. The Contract as submitted by Respondent, L.J.H. Corporation, did not meet the requirements of the Statute of Frauds inasmuch as it contained no property description or Exhibit "B," and was a void contract. The Contract as modified and returned by Plaintiff by attaching a new legal description was never accepted by Respondent/Cross–Plaintiff, L.J.H. Corporation.*

 The claim in this subpart is based upon the following circumstances: MTrust had forwarded a bid package to Ed Bodolay, owner of a hunting lodge near the Antelope place. Bodolay gave the bid package to an acquaintance, Lacy Harber, President of LJH Corporation, which owned various investments including marinas, ranches and oil properties. Harber filled in the blanks in the contract forms in a manner so as to constitute an offer to purchase all six tracts for $1,001,000, signed the contracts in duplicate on behalf of L.J.H. Corporation and mailed them to MTrust, together with the deposit of one percent of the price bid. Although Harber testified that he reviewed Exhibits A and B, and they constituted the basis for his sending in the contracts, he did not reattach any of the exhibits to the contracts when he signed and sent in his bid.

In claiming that the contract as submitted by L.J.H. was void because it did not contain a property description or Exhibit B, L.J.H. overlooks that on the first page of the contract reference is made to "Exhibit 'B' attached hereto and incorporated herein by reference for all purposes." It is uniformly held that an unsigned paper may be incorporated by reference into the paper

signed by the person sought to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing. *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex.1968). Likewise, in insisting that the contract as modified by attaching a new legal description was never accepted, L.J.H. ignores the undisputed evidence in the record that the metes and bounds description attached to the signed contract returned to L.J.H. accurately describes the very same land boundaries as are shown in Exhibit B, thus there was no "new" legal description but simply a different type of legal description.

It is elementary that an acceptance must not change or qualify the terms of an offer; if it does, there is no agreement manifested because the modification then constitutes a counteroffer. *See United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 365 (Tex.1968). The modification made, however, must be material in order to constitute a counteroffer. *See Chapman v. Mitsui Eng'g. & Shipbuilding*, 781 S.W.2d 312 (Tex.App.—Houston [1st Dist.] 1989, writ denied). In this case, we find that MTrust's substitution of the metes and bounds description for the cartographical description of Exhibit B was not a material modification of L.J.H.'s bid offer. Therefore, it did not constitute a counteroffer.

*d. Plaintiff's admission in paragraph four of its Original Petition reflects that instead of attaching new copies of the insufficient description of the property, Plaintiff attached field notes providing a different description of the land to the Contract submitted by Respondent/Cross–Plaintiff which constituted a modification of Respondent/Cross–Plaintiff's Contract, which constituted a counter-offer.*

The actual language of the pleading referred to includes the following statement: "Instead of attaching new copies of the plat(s) Plaintiff attached field notes describing the same land that was identified on the plats." In the light of what we have previously written, we hold such language is not an admission of a material modification constituting a counteroffer.

*e. Respondent/Cross–Plaintiff, L.J.H. Corporation, did not accept the counter amended Contract as submitted by Plaintiff for the sale of the property in issue.*

*f. Plaintiff was required under the law to accept the Contract as submitted by Respondent/Cross–Plaintiff in its original form and substance without change or modification and that change and modification by Plaintiff constituted a counter-offer which was not accepted or agreed to by Respondent/Cross–Plaintiff.*

Since we have rejected all of L.J.H.'s claims regarding modification and counteroffer, we find no support for the trial court's action in these two subparts.

*g. The Invitation to Bid and Contract for Sale of Realty as submitted by Plaintiff did not make proper disclosure of undivided interest outstanding in third parties and therefore, did not disclose that Plaintiff could not convey full and complete title as to the realty in issue.*

We are unaware of any duty to make such disclosure. Generally, in the absence of an agreement to the contrary, it is unimportant that the vendor's title is bad, or that the land is encumbered at the time the contract is made, if it is made in good faith and he is prepared to convey the title guaranteed at the time set for performance. *Runnells v. Pruitt*, 204 S.W. 1017, 1019 (Tex.Civ.App.—Dallas 1918, no writ). There is no rule of law which renders it illegal for a person to promise to convey land which he does not own. *Hufstutler v. Grayburg Oil Co.*, 48 S.W.2d 591 (Tex. Comm'n.App.1932, holding approved). The fact that the seller did not own the land at the time the contract was made becomes important only in connection with other facts showing grounds for equitable relief to the purchaser. *Id.* at 593. The contract before us specifically states that the trustee, "acting in its Fiduciary capacity only, executes this instrument without covenant or warranty of any kind, expressed or implied regardless of any provision hereof." The record also shows that before MTrust

offered the land for sale, it had written concurrences for the sale from everyone it knew of who owned outstanding interests, thus demonstrating the good faith in its ability to deliver good title at the time of closing. We conclude that subpart g. presents no basis for the court's action.

*h. Plaintiff failed to introduce the Will of Birdie Godwin Wright, Deceased naming First Wichita National Bank as Trustee under her Last Will and Testament. Plaintiff failed to prove the change or succession of Trustee from First Wichita National Bank to MBank and the change or succession from MBank to MTrust, N.A. as the designated trustee under the last Will and Testament of Birdie Godwin Wright, Deceased.*

*i. Plaintiff failed to prove their authority to bring suit under the terms and conditions of the Last Will and Testament of Birdie Godwin Wright as trustee or otherwise.*

 In order for L.J.H. to have questioned the capacity of MTrust to bring suit as trustee it was required to file a verified plea in abatement in compliance with TEX. R.CIV.P. 93(1) & (2). Its failure to do so constitutes a waiver of its right to complain of MTrust's lack of capacity. *See Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1989) (per curiam). Consequently, neither of the above subparts provides a basis for the court's action in taking the case from the jury. Based upon our analysis of paragraphs a. through i., and of appellee's "Motion to Withdraw Case From Jury and to Render Instructed Verdict in Favor of Respondent/Cross–Plaintiff," we sustain appellant's points of error one through twelve. Having concluded that there are fact issues to be resolved as to MTrust's cause of action, we will not address its remaining points of error dealing with LJH's cross-action.

Judgment reversed and cause remanded for new trial.