**GASMARK, LTD., Appellant,**

v.

**KIMBALL ENERGY CORP., Appellee.**

No. 2–93–066–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 12, 1994.

Rehearing Overruled Feb. 16, 1994.

Butler & Harris, and Katherine L. Butler and Elizabeth J. Tepikian, Houston, for appellant.

Law, Snakard & Gambill and H. Allen Pennington, Jr., and Andrew C. Rector, Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and WEAVER, JJ.

## OPINION

FARRIS, Justice.

GasMark, Ltd. sued Kimball Energy Corporation to enforce an alleged four-month natural gas purchase and sale contract. GasMark moved for summary judgment to enforce the contract and Kimball moved for summary judgment claiming no contract existed. The trial court granted Kimball's motion and denied GasMark's. Because no material issues of fact exist and the parties never reached or executed an agreement for multi-month purchases of gas, GasMark's points of error are overruled and the judgment is affirmed.

■ In its first point of error, GasMark claims because it submitted an agreement, complete on its face, the trial court erred in granting Kimball's motion for summary judgment. In so claiming, GasMark argues that under Texas law, a signed, unambiguous contract cannot be interpreted according to the parties' whims; instead, the parties are bound by the objective intent of the documents they sign. While this is a correct statement of law, it does not apply to the current dispute, which concerns the agreement process, not its terms.[1]

The summary judgment evidence is the affidavits of the personnel involved in the

---

1. Because the pertinent facts in this case are uncontested, the issue on appeal is whether an

transaction and the documents they exchanged. These documents reveal the following transpired.

(1) On November 6, 1990, Kimball's Mike Johnston sent a letter to GasMark's Will Baird, advising he would prepare an agreement, whereby Kimball would agree to purchase natural gas from GasMark. At this time Baird indicated to Johnston no security for payment would be required.

(2) On November 8, 1990, Edwin Ireland, President of GasMark, signed the November 6, 1990 letter and included a provision that the confirmation was subject to the execution of a mutually agreed formal contract. All parties initialed this added provision.

(3) On November 29, 1990, Kimball Smith of Kimball, sent a proposed escrow agreement by telecopy to GasMark's Brenda Herod.

(4) On November 30, 1990, GasMark's Brenda Herod sent the proposed escrow agreement to Kimball Smith of Kimball.

(5) On December 12, 1990, Mike Johnston sent Kimball's form Firm Gas Purchase Agreement to GasMark's Will Baird. This agreement called for 2,000 MMBtu of gas per day to be delivered at a price of $2.08 per MMBtu with payment to be made according to an escrow agreement. This agreement states the contract "embodies the entire agreement between Buyer and Seller for the purchase and sale of gas described herein, and supersedes any and all prior agreements and understandings, whether oral or written."

(6) On January 10, 1991, Kimball Smith telecopied Kimball's changes to the escrow agreement to GasMark's Brenda Herod.

(7) On January 15, 1991, GasMark's John Green called Kimball Smith and refused the January 10, 1991 changes to GasMark's form agreement and requested Kimball to provide a $370,000 letter of credit.

(8) On January 17, 1991, Kimball's Mike Johnston sent a letter to GasMark's Will Baird inquiring about the agreement he had sent on December 12, 1990. Under separate letter of the same date, Mike Johnston sent Will Baird a document entitled "Amendment to Firm Gas Purchase Agreement." This amendment changed the billing and payment arrangements, and the price and security provision.[2]

(9) On January 21, 1991, GasMark's Mary Sheffield sent the Firm Purchase Agreement of December 12, 1990, back to Kimball, but not the document of January 17, 1991, entitled "Amendment to Firm Gas Purchase Agreement." The document as sent called for a price of $2.08 per MMBtu and payment by wire transfer.

(10) On February 1, 1991, Kimball's Julie Dowler sent a second document entitled "Amendment to Firm Gas Purchase Agreement" to GasMark's John Green. This amendment called for a more expansive Force Majeure clause than that included in the Firm Gas Purchase Agreement of December 12, 1990, for payment by wire transfer, a letter of credit, and a price of $2.075 per MMBtu effective January 1, 1991.

(11) On February 11, 1991, GasMark's Mary Sheffield sent GasMark's response to Kimball's January 17, 1991 proposal. This response provided for no change in the Force Majeure clause, payment by wire transfer, a letter of credit, and a price of $2.075 per MMBtu effective February 1, 1991. GasMark also sent, under the same cover, an executed copy of an amendment to escrow agreement providing for payment to be made to GasMark, not by wire transfer, but from the escrow agent.

(12) On February 18, 1991, Kimball Smith of Kimball told GasMark's John Green that Kimball was terminating the negotiations.

From December 1990 to February 1991, Kimball purchased gas from GasMark at $2.08 per MMBtu.

---

agreement existed.

**2.** The price changed from $2.08 per MMBtu to $2.075 per MMBtu effective January 1, 1991, and the provision concerning the escrow agreement was deleted and replaced by a wire transfer and letter of credit provision.

■ Generally, contracts for the purchase and sale of oil and gas are governed by the Uniform Commercial Code (U.C.C.). *See* TEX.BUS. & COM.CODE ANN. § 2.107 (Tex. UCC) (Vernon Supp.1994). However, the effect of the UCC may be varied by agreement. TEX.BUS. & COM.CODE ANN. § 1.102(c), (d) (Tex.UCC) (Vernon 1968). The parties can agree that their negotiations to enter into a binding contract are to be subject to the common-law requirements of a formal offer and acceptance, rather than the more flexible formation provisions of article 2. *See id.*

■ The parties agree the November 6, 1990 correspondence was a "letter of intent." A "letter of intent" is customarily employed to reduce to writing a preliminary understanding of the parties who intend to enter into contract. *Garner v. Boyd,* 330 F.Supp. 22, 25 (N.D.Tex.1970), *aff'd,* 447 F.2d 1373 (5th Cir.1971). In this letter, GasMark agreed to negotiate with Kimball provided it agreed to execute a "mutually agreed formal contract." By initialing this condition, Kimball accepted GasMark's offer to operate under the common-law requirements of a formal offer and acceptance rather than under article 2 of the UCC. *See* TEX.BUS. & COM. CODE ANN. § 2.201(b) (Tex.UCC) (Vernon 1968); *Great Western Sugar Co. v. Lone Star Donut Co.,* 721 F.2d 510 (5th Cir.1983).[3]

■ Formal negotiations began on December 12, 1990, when Kimball sent GasMark its form Firm Gas Purchase Agreement ("Offer One"). Kimball revoked this offer on January 17, 1991, when it sent GasMark the "Amendment to Firm Purchase Agreement" ("Offer Two"). This amendment changed the billing and payment provisions, and the price. These changes significantly altered the terms of the original offer and revoked "Offer One."

■ GasMark rejected "Offer Two" on January 21, 1991, when it sent a counteroffer to Kimball ("Counteroffer One"). This counteroffer contained all the terms included in "Offer One," except the billing provision. GasMark claims this correspondence was its acceptance of "Offer One." However, "Offer One" no longer existed because it was revoked by "Offer Two." In addition, this correspondence was not an acceptance of "Offer Two" because it contains a different term.[4] Under the common law, an acceptance must be identical with the offer to make a binding contract. *Gilbert v. Pettiette,* 838 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1992, no writ). If the acceptance modifies a term of the offer, there is no agreement and the modified acceptance becomes a counteroffer. *MTrust Corp. N.A. v. LJH Corp.,* 837 S.W.2d 250, 254 (Tex.App.—Fort Worth 1992, writ denied).

■ Kimball rejected "Counteroffer One" and revoked "Offer Two" when it sent the second "Amendment to Firm Gas Purchase Agreement" on February 1, 1991. This document became ("Counteroffer Two") and GasMark rejected it on February 11, 1991, when it sent the January 17, 1991 "Amendment to Firm Purchase Agreement" ("Counteroffer Three"). "Counteroffer Two" expanded the coverage of the Force Majeure clause, provided payment by wire transfer, secured by letter of credit, and a price of $2.075 per MMBtu effective January 1, 1991. "Counteroffer Three" called for no expansion of the Force Majeure clause and a price of $2.075 per MMBtu effective February 1, 1991. Because "Counteroffer Three" modified the terms of "Counteroffer Two," it rejected that counteroffer and became a counteroffer. Further, "Counteroffer Three" was not an acceptance of "Offer Two" because GasMark rejected it when it sent "Counterof-

---

**3.** In *Great Western Sugar Co. v. Lone Star Donut Co.,* the court stated:

> While a mere confirmation without timely objection might have been sufficient under the "merchants exception," the trial court correctly concluded that, as the master of its offer, Great Western, the sender, had the power to require written acceptance as a prerequisite to the formation of a contract. Since it did, and since none was given, no contract arose.
> *Great Western Sugar Co. v. Lone Star Donut Co.,* 721 F.2d 510, 510–11 (5th Cir.1983).

**4.** "Offer Two" provided a price of $2.075 per MMBtu effective January 1, 1991, while "Counteroffer One" provided a price of $2.08 per MMBtu.

fer One." Once terminated, an original offer can never be revived. *Kurio v. United States,* 429 F.Supp. 42, 65 (S.D.Tex.1970).

 Kimball rejected "Counteroffer Three" on February 18, 1991, when it advised GasMark it was terminating the negotiations. If parties negotiating a contract intend that the contract shall be reduced to writing and signed by the parties, as is the case here, then either party may withdraw at any time before the written agreement is drawn up and signed by both parties. *See Premier Oil Refining Co. v. Bates,* 367 S.W.2d 904, 907 (Tex.Civ.App.—Eastland 1963, writ ref'd n.r.e.). Because Kimball properly withdrew from the negotiations prior to the formation of a contract, point of error one is overruled.

In point of error two, GasMark claims its motion for summary judgment should have been granted. Because we hold no contract existed, we overrule point of error two.

The judgment is affirmed.