COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-337-CV

 

                                                    

ARLO L.
SCHRIVER AS TRUSTEE 

OF THE SCHRIVER FAMILY TRUST                                 APPELLANT



 

                                                   V.

 

THE TEXAS DEPARTMENT OF                                                  APPELLEE

TRANSPORTATION

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

In a single issue, appellant Arlo L. Schriver as
trustee of the Schriver Family Trust (the Trust) asserts that the trial court
erred in granting the plea to the jurisdiction filed by appellee the Texas
Department of Transportation (TxDOT).  We
affirm. 








                                          I.  Background

The Trust owns approximately .251 acres of land
in Tarrant County (the Property) that is subject to a twenty-year billboard
lease held by Clear Channel Outdoor, Inc. (Clear Channel).  In May 2006, Halff Associates, Inc. (Halff),
purporting to act for TxDOT, sent a letter to the Trust stating that TxDOT
intended to acquire the Property for construction of State Highway 121.  Citing an independent appraisal, TxDOT
(through Halff) offered to pay the Trust $293,300 for all interests in the
Property.  The offer directed the Trust
to negotiate with any lessees or interest owners in the Property.

A few weeks later, the Trust=s
attorney sent a letter to Halff purporting to accept TxDOT=s offer
but stating that its acceptance applied to Athe
Trust=s
interest in the Property alone, exclusive of any other interests in the
Property.@ 
Moreover, the Trust rejected TxDOT=s
directive that the Trust negotiate with lessees of the Property.

Halff=s letter
in response acknowledged the Trust=s Aacceptance@ but
sought to Aameliorate any misunderstanding
that might have been present in [the parties=] previous
communications.@ 
Specifically, the letter explained that TxDOT=s offer
represented one hundred percent of the appraised value, required the Trust to
negotiate with any lessees so that it could provide Afee
simple@ title,
and was Athe only
offer anyone will offer the Trust.@








The Trust disputed the legality of TxDOT=s
requirement that the Trust negotiate with other interest owners in the
Property.  The Trust also expressed
concern about Halff=s authority to act on behalf of
TxDOT and informed Halff that it would not further respond to TxDOT=s offer
until Halff provided documents establishing Halff=s
authority.  Halff then sent the Trust a
formal final-offer letter and explained that if the offer was not accepted
within ten days, it would be deemed rejected. 
The letter also stated that if the Trust did not accept the offer, TxDOT
would commence eminent domain proceedings to condemn the Property.

In response, the Trust stated that Awe stand
by our prior acceptance of TxDOT=s offer
to purchase the Trust=s interest in the Property for
the sum of $293,300.00.@ 
The Trust also again requested documentation establishing Halff=s
authority.  Thereafter, Halff forwarded
the Trust an e-mail from TxDOT discussing the Trust=s
assertions.  TxDOT explained that Athe fee
simple interest . . . that has been offered, is for all interests in the
property.@ 
TxDOT also disagreed with the Trust=s
assertion that TxDOT had to negotiate separately with each owner of an interest
in the Property.  Finally, TxDOT refused
to close with the Trust unless the Trust would agree to dispose of all
interests of any owners in the Property.








The Trust then filed suit against Halff and TxDOT
under the Uniform Declaratory Judgments Act (UDJA), seeking declaratory relief
to resolve the parties= disputes as to: (1) whether
Halff had authority to negotiate on behalf of and bind TxDOT to a
pre-condemnation agreement with the Trust; (2) the legality of the requirement
that the Trust deal with other interest owners on TxDOT=s
behalf; and (3) the validity and construction of, and the parties= status
and rights with respect to, the written settlement agreement the Trust believes
was reached pursuant to the parties=
communications.  The Trust also requested
an award of costs and attorney=s fees.

TxDOT answered and filed a plea to the
jurisdiction asserting sovereign immunity from the Trust=s
suit.  The trial court granted TxDOT=s plea
to the jurisdiction and this interlocutory appeal followed.[1]

II. 
Standard of Review








We review the trial court=s ruling
on a plea to the jurisdiction based on immunity from suit under a de novo
standard of review.[2]  In reviewing the denial of a plea to the
jurisdiction, we do not review the merits of the case.[3]  We construe the pleadings liberally in favor
of the plaintiff and look to the plaintiff=s
intent.[4]  Our focus is not on the plaintiff=s claims
but on the allegations in the pleadings.[5]  Whether a plaintiff has alleged facts that
affirmatively demonstrate a trial court=s
subject matter jurisdiction, or whether undisputed evidence of jurisdictional
facts establishes a trial court=s
jurisdiction, is a question of law.[6]

III. 
Analysis








In a single issue, the Trust asserts that the
trial court has subject matter jurisdiction over its declaratory judgment
action because the parties entered an agreement settling an eminent domain
claim for which TxDOT=s immunity from suit was waived
and, therefore, TxDOT=s immunity is likewise waived
for the Trust=s claims for declarations
construing the agreement.[7]  Alternatively, the Trust asserts that it
raised a fact issue about the existence of an agreement and the trial court
could not act on TxDOT=s plea to the jurisdiction
without first resolving that threshold fact. 
TxDOT responds that as a matter of law there is no contract between the
Trust and TxDOT, and without a contract settling a claim for which immunity is
waived, there is no waiver of immunity for breach of contract.

A.     Applicable LawCNo
Waiver of Immunity For Mere Negotiations








TxDOT possesses immunity from suit and from
liability.[8]  Although a governmental entity like TxDOT
waives immunity from liability when it contracts with private citizens, its
immunity from suit is not waived solely by its entering into such a contract.[9]  Express legislative consent, in clear and
unambiguous language, is required to show that immunity from a breach of
contract suit has been waived.[10]

In Lawson, a plurality of the Supreme
Court of Texas concluded that when a governmental entity settles a claim for
which immunity from suit has been waived, immunity from suit is also waived for
a breach of the settlement agreement.[11]  The plurality reasoned that Awhen a
governmental entity is exposed to suit because of a waiver of immunity, it
cannot nullify that waiver by settling the claim with an agreement on which it
cannot be sued.@[12]








Following the Lawson plurality=s
reasoning, this court held in Singer that sovereign immunity does not
bar a breach of contract claim against a governmental entity where the contract
at issue settles an eminent domain claim.[13]  In eminent domain actions, a landowner has a
constitutional claim for adequate compensation against the condemnor, and there
is no sovereign immunity against such claim.[14]  We reasoned in Singer that, just as in
Lawson, a governmental entity cannot claim immunity from a landowner=s claim
for adequate compensation under article I, section 17 of the Texas
Constitution, by contracting to purchase the property for a public purpose
before initiating eminent domain proceedings.[15]  We recognized that A[a]n
agreement to convey property to a governmental authority for a public purpose
has the same effect as a formal condemnation proceeding.@[16]








Under Texas law, however, mere negotiations for
the purchase of property that do not result in the formation of a contract do
not afford the owner the right to recover damages from the State, Abecause
there has been neither a taking or any character of a physical invasion of the
property.@[17]  Government action does not give rise to a
cause of action under article I, section 17, Ain the
absence of a current, direct restriction on the property=s use.@[18]  Thus, while negotiations are a
statutorily-mandated prerequisite to filing a condemnation action, the mere
fact that a governmental entity engages in such negotiations does not, without
more, trigger a waiver of governmental immunity under article I, section 17.[19]  Accordingly, to establish a waiver of
immunity for a breach of contract claim predicated on an underlying eminent
domain action, a party must establish the existence of an agreement by which a
governmental entity contracted to acquire property for a public purpose.[20]








Settlement agreements are governed by the law of
contracts.[21]  Under Texas law, the requirements of a
contract are: (1) an offer; (2) an acceptance in strict compliance with the
terms of the offer; (3) a meeting of the minds; (4) each party=s
consent to the terms; and (5) execution and delivery of the contract with the
intent that it be mutual and binding.[22]  A[A]n
acceptance must be identical with the offer to make a binding contract.@[23]  If the acceptance modifies the terms of an
offer, there is no agreement because the modification constitutes a
counteroffer.[24]

B.     No Settlement AgreementCNo
Waiver of Immunity

Here, TxDOT made an offer to the Trust to
purchase all interests in the Property for $293,300.  The offer directed the Trust to negotiate
with any lessees or interest owners in the Property.  The Trust=s
purported acceptance modified this offer in two respects and, therefore, there
was neither a valid acceptance nor a meeting of the minds.[25]








First, although TxDOT offered to purchase the
Property without any qualification, the Trust=s
response stated that the Trust=s Aacceptance@ applied
only to Athe
Trust=s
interest in the Property alone, exclusive of any other interests in the
Property.@ 
Second, although the offer explained that TxDOT expected the Trust to
negotiate with lessees regarding their interests in the Property, the Trust
declined to negotiate with lessees and indicated that TxDOT would have to
acquire leasehold interests in the Property on its own.  Thus, the response proposed modifications to
both the scope of the property to be purchased and the terms by which lessees=
interests in the Property would be negotiated.

Because the Trust=s
response to TxDOT=s offer proposed modifications
of the scope of the interest that TxDOT sought to acquire and the terms for
dealing with lessees, the Aacceptance@ was
actually a counteroffer.[26]  The parties never reached any agreement
regarding the Trust=s counteroffer and,
consequently, as a matter of law no contract was formed.  Absent a contract settling a claim for which
immunity was waived, there was no waiver of TxDOT=s immunity
against the Trust=s declaratory judgment action.[27]  The trial court, therefore, did not err in
granting TxDOT=s plea to the jurisdiction.








IV. 
Conclusion

For the foregoing reasons, we affirm the trial
court=s order
granting TxDOT=s plea to the jurisdiction.

 

 

JOHN
CAYCE

CHIEF
JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON
and WALKER, JJ.

LIVINGSTON, J. filed a concurring opinion.

DELIVERED:  July 30, 2009

 











 
 
 
 
 
 
 




 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-08-337-CV

 

ARLO L. SCHRIVER AS
TRUSTEE                                           APPELLANT

OF THE SCHRIVER FAMILY
TRUST

                                                   V.

THE
TEXAS DEPARTMENT OF                                                  APPELLEE

TRANSPORTATION

                                              ------------

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

                                              ------------

                                  CONCURRING
OPINION

                                              ------------








I concur with the majority=s
conclusion that as a matter of law, the parties to this case did not enter any
contract, and the precedents of the supreme court and our court related to
agreements settling immunity-waived claims do not therefore apply.  See Tex. A & M Univ.‑Kingsville
v. Lawson, 87 S.W.3d 518, 522B23 (Tex.
2002); City of Carrollton v. Singer, 232 S.W.3d 790, 799B800
(Tex. App.CFort Worth 2007, pet. denied).[1] 
However, I write separately to expand upon some of the statements made
by the majority in reaching its decision and to opine that if the parties in
this case had entered into a valid contract, TxDOT=s
immunity would be waived under Singer.








The majority states that immunity from suit is
not waived solely by a government entity=s
entering into a contract with a private citizen.  Majority op. at 6.  While that legal principle may be true in
some circumstances, it is not true in others. 
The majority acknowledges that immunity can be waived by entering
a contract where the government is not immune from the claim that the contract
settles.  See Lawson, 87 S.W.3d at
522B23; Singer,
232 S.W.3d at 799B800.  Furthermore, a condition precedent to eminent
domain proceedingsCgovernmental attempts to settleC was
occurring at the time of the completed settlement (in Singer) and at the
time the parties were exchanging conflicting settlement proposals (in this
case).[2]  See
Singer, 232 S.W.3d at 797 (describing that Aa
genuine effort to purchase the land by agreement between the parties, and the
failure to do so, is a condition precedent to instituting eminent domain
proceedings@); see also Tex. Prop.
Code Ann. ' 21.012(b)(4) (Vernon Supp.
2008) (dictating that a condemnation petition may be filed only after the
government=s failure to reach an agreement
with a landowner).  Thus, I reiterate
that had the parties to this suit completed their statutorily required
settlement negotiations and properly formed a contract, thus avoiding TxDOT=s
liability in an eminent domain proceeding for which immunity is waived, TxDOT
would have no immunity for a breach of that contract, just as the City of
Carrollton had no immunity for a suit claiming a breach of its agreement in Singer.








Having expressed these concerns about the
majority=s
opinion, I respectfully concur but otherwise join in its opinion and judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

DELIVERED:  July 30, 2009











[1]See Tex. Civ. Prac. &
Rem. Code Ann. '  51.014(a)(8)
(Vernon 2008).  Halff is not a party to
this appeal.





[2]See Tex. Dep=t of Parks & Wildlife
v. Miranda,
133 S.W.3d 217, 225B26 (Tex. 2004); City
of Carrollton v. Singer, 232 S.W.3d 790, 794 (Tex. App.CFort Worth 2007, pet.
denied).





[3]See State v. Fiesta Mart,
Inc.,
233 S.W.3d 50, 53B54 (Tex. App.CHouston [14th Dist.]
2007, pet. denied) (citing Chocolate Bayou Water Co. & Sand Supply v.
Tex. Natural Res. Conservation Comm'n, 124 S.W.3d 844, 849 (Tex. App.CAustin 2003, pet.
denied)).





[4]See Miranda, 133 S.W.3d at 226; Singer,
232 S.W.3d at 795.





[5]See Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Werthmann v. City of Fort Worth,
121 S.W.3d 803, 806 (Tex. App.CFort Worth 2003, no pet.).





[6]See Miranda, 133 S.W.3d at 226; Singer,
232 S.W.3d at 794.





[7]See Tex. A & M
Univ.-Kingsville v. Lawson, 87 S.W.3d 518, 521B22 (Tex. 2002) (plurality op.); Singer,
232 S.W.3d at 800.  We note that a party
cannot circumvent a sovereign immunity bar by recasting a breach of contract
claim as a UDJA claim.  See Tex.
Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 856 (Tex. 2002); Koch
v. Tex. Gen. Land Office, 273 S.W.3d 451, 455 (Tex. App.CAustin 2008, pet.
filed).  The Trust, however, does not
assert that TxDOT=s immunity is waived
under the UDJA.





[8]See Fed. Sign v. Tex. S.
Univ.,
951 S.W.2d 401, 405 (Tex. 1997).





[9]See Catalina Dev., Inc.
v. County of El Paso, 121 S.W.3d 704, 705 (Tex. 2003); Gen. Servs. Comm=n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). 
Under Chapter 271 of the Local Government Code, however, when a properly
executed and authorized contract provides goods or services to a local
government, the local government waives sovereign immunity to suit for the
purpose of adjudicating a claim for breach of the contract.  See Tex. Loc. Gov=t Code Ann. '' 271.151-.152 (Vernon
2005); Singer at 795 n. 4. Chapter 271 specifically excludes its
application to TxDOT, however, and the Trust has not argued that the chapter is
applicable.  Tex. Loc. Gov=t Code Ann. ' 271.151(3); Tex. Gov=t Code Ann. ' 2260.001(4) (Vernon
2008).





[10]See Tex. Gov=t Code Ann. ' 311.034 (Vernon Supp.
2008); Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248
(Tex. 2002).





[11]87 S.W.3d at 521B22.





[12]Id. at 521.





[13]See Singer, 232 S.W.3d at 800.





[14]Tex. Const. art. I, ' 17; Singer, 232
S.W.3d at 796.





[15]Singer, 232 S.W.3d at 796.





[16]See id. at 798.





[17]Westgate, Ltd. v. State, 843 S.W.2d 448, 452
(Tex. 1992) (quoting State v. Vaughan, 319 S.W.2d 349, 354 (Tex. Civ.
App.CAustin 1958, no writ) (A[T]he condemnation may be
completely abandoned and the property never taken.@)).





[18]Westgate, 843 S.W.2d at 452.





[19]See Tex. Prop. Code Ann. ' 21.012(a), (b)(4)
(Vernon Supp. 2008).





[20]The dissent in Singer
concluded that because the contract at issue was not a settlement agreement, ALawson clearly has no
application to the facts of [the] case.@  Singer,
232 S.W.3d at 801 (Cayce, C.J., dissenting).





[21]Schlumberger Tech. Corp.
v. Swanson,
959 S.W.2d 171, 178 (Tex. 1997); Williams v. Glash, 789 S.W.2d 261, 264
(Tex. 1990).





[22]Hubbard v. Shankle, 138 S.W.3d 474, 481
(Tex. App.CFort Worth 2004, pet.
denied).





[23]Gasmark, Ltd. v. Kimball
Energy Corp.,
868 S.W.2d 925, 928 (Tex. App.CFort Worth 1994, no writ); see also MTrust
Corp. N.A. v. LJH Corp., 837 S.W.2d 250, 254 (Tex. App.CFort Worth 1992, writ
denied).





[24]Gasmark, 868 S.W.2d at 928; MTrust
Corp., 837 S.W.2d at 254.





[25]See Gasmark, 868 S.W.2d at 928;
MTrust Corp., 837 S.W.2d at 254.





[26]See Gasmark, 868 S.W.2d at 928; MTrust
Corp., 837 S.W.2d at 254 (material modification of the terms of an offer
constitutes a counteroffer).





[27]See Singer, 232 S.W.3d at 798.





[1]Citing Lawson, the Trust has argued
that we cannot consider the validity of the parties= contract in making our
decision in this case.  In Lawson,
the supreme court stated that it would not consider whether a settlement
agreement was void because of the posture of that case, in which no evidence or
argument on the validity of the agreement had been offered in the trial
court.  Lawson, 87 S.W.3d at
523.  Here, the parties provided evidence
in the trial court of their written communications with each other, and they
argued about the completion of their contract negotiations.  Also, there is an obvious difference between
consideration in an interlocutory appeal of whether an undisputedly completed
agreement is void for reasons unrelated to the agreement=s formation, as was the
issue in Lawson, and whether there is even an agreement to begin with
that could be subject to Lawson=s analysis, as is the case here.  See id.





[2]Here, Halff Associates, TxDOT=s agent in the
condemnation process, sent the Trust a letter stating that its property was Arequired for the
construction@ of State Highway
121.  Halff Associates described its
letter as a Astage of the purchase
process@ and then referenced
eminent domain proceedings.  In a later
letter, Halff Associates recognized that it was attempting to acquire a
right-of-way Aunder the threat of
condemnation.@