J-A27020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BEEMAC TRUCKING, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CNG CONCEPTS, LLC, PEARCE SALES AGENCY, LLC, ASPRO AND ASPRO USA, | |
| Appellees | No. 1801 WDA 2014 |

Appeal from the Order Entered October 8, 2014
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 11035-2014

BEFORE:  BOWES, OLSON & STABILE, JJ.

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 27, 2016**

Appellant, Beemac Trucking, LLC, appeals from the order entered on October 8, 2014.  We reverse.

The factual background and procedural history of this case are as follows.  Appellant is a trucking company located in Beaver County.  It planned to build and operate a compressed natural gas fueling station in Ambridge to service its own fleet and to sell gas to the public.  In early 2012, Appellant contacted CNG Concepts, LLC ("CNG Concepts") to discuss Appellant's interest in acquiring equipment needed to construct a compressed natural gas fueling station.  CNG Concepts is a seller's agent for the equipment Appellant was seeking.  CNG Concepts referred Appellant to

Pearce Sales Agency, LLC ("Pearce"),[1] which was acting as an agent for Aspro, and its United States affiliate, Aspro USA (collectively, "Aspro"). In December 2012, Appellant entered into negotiations with Pearce regarding the purchase of equipment necessary to build the compressed natural gas fueling station.

On December 7, 2012, Aspro provided a proposal to Appellant which included, *inter alia*, Aspro's "General Conditions of Supply for Products and Services." Included in those conditions was the following provision:

> This contract shall be governed by and construed in accordance with the laws of the State of Texas, and the parties agree to submit to the personal jurisdiction of any court of law in the state of Texas any controversy or claim arising out of or relating to this agreement.

N.T., 9/17/14, at Exhibit 3 ("governing law provision").

After continued negotiations, Aspro provided a revised proposal on January 28, 2013. The revised proposal included different equipment, and a different price, than the December 7 proposal. The January 28 proposal stated that, "Aspro's standard [t]erms and [c]onditions of [s]ale have been attached to this [p]roposal." Pearce's Preliminary Objections, 7/30/15, at Exhibit 2. However, no such terms and conditions were attached to the proposal. *See id.*

---

[1] Technically, CNG Concepts referred Appellant to David J. Pearce. At some point, David J. Pearce formed Pearce Sales Agency, LLC. For simplicity, we refer to David. J. Pearce and Pearce Sales Agency, LLC interchangeably as Pearce.

The following day, January 29, 2013, Aspro sent a quote to Appellant which mirrored the January 28 proposal. The only change from the January 28 proposal was the attachment of a credit application to the quote. The credit application contained certain terms and conditions, but neither the January 29 quote nor the credit application incorporated or referenced Aspro's General Conditions of Supply for Products and Services. In addition, the terms and conditions included within the credit application did not contain the governing law provision.

On February 12, 2013, Appellant forwarded a purchase order for the items included in the January 29 quote, along with the completed credit application. Thereafter, Appellant paid $538,478.50 as partial payment for the items described in the January 29 quote. On June 27, 2014, after not receiving the equipment by the agreed upon date, Appellant notified Aspro and Pearce that it was cancelling its order.

On July 8, 2014, Appellant filed a breach of contract complaint in the Court of Common Pleas of Beaver County. Pearce filed preliminary objections arguing that the contract between the parties included a forum selection clause which stated that all litigation arising from the parties' contract must be contested in the courts of Texas. Simultaneously, Pearce filed a petition for change of venue. Appellant opposed both the preliminary objections and the petition for change of venue. The trial court ordered discovery limited to the issue of venue. *See* Pa.R.C.P. 1028(c)(2); *see also*

J-A27020-15

*Wimble v. Parx Casino & Greenwood Gaming & Entm't, Inc.*, 40 A.3d 174, 179 (Pa. Super. 2012) (discussing trial court's discretion to order discovery on the issue of venue). Pursuant to that order, the parties took depositions and engaged in written discovery. On October 8, 2014, the trial court sustained Pearce's preliminary objections and declined to exercise jurisdiction over the dispute. This timely appeal followed.[2]

Appellant presents one issue for our review:

Whether the [t]rial [c]ourt erred in concluding that a forum selection clause existed between the parties which precluded the [trial c]ourt from [exercising jurisdiction over Appellant's] claims[?]

Appellant's Brief at v.

"Generally, this Court reviews a trial court order sustaining preliminary objections based upon improper venue for an abuse of discretion or legal error." *Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 9 A.3d 1207, 1211 (Pa. Super. 2010) (citation omitted). We first address Appellant's claim that even if the governing law provision contained in Aspro's General Conditions of Supply for Products and Services became part of the parties' contract, it is a choice-of-law provision and not a forum

---

[2] On November 6, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On November 13, 2014, Appellant filed its concise statement. All issues raised on appeal were included in Appellant's concise statement. On December 1, 2014, the trial court sent a letter to the prothonotary of this Court outlining its rationale for sustaining Pearce's preliminary objections.

- 4 -

selection clause. This argument is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). The first time Appellant argued that the governing law provision was, in fact, a choice-of-law provision and not a forum selection clause was in its concise statement. An issue raised for the first time in a concise statement is waived. *Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1104 (Pa. Super. 2010) (citation omitted). The trial court never had an opportunity to consider this aspect of Appellant's claim, since Appellant raised it for the first time after the notice of appeal was filed. Appellant's pleadings, and the arguments presented before the trial court, make clear that the trial court assumed that the governing law provision was a forum selection clause. Thus, this issue is waived under Rule 302(a).

Appellant next argues that the trial court's finding that the governing law provision was incorporated into the contract is unsupported by the record. Pearce argues that the governing law provision attached to the December 7 proposal was incorporated into the January 28 proposal and the January 29 quote. For the reasons set forth below, we conclude that the governing law provision was not included in the parties' contract.

As a preliminary matter, we must conduct a choice-of-law analysis. "[T]he first step in a choice-of-law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Sheard v. J.J. DeLuca Co., Inc.*, 92 A.3d 68, 76 (Pa. Super.

- 5 -

2014) (citation omitted). "After ascertaining the law, the court conducts a case-by-case analysis. Where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a false conflict, and the court should avoid the choice-of-law question." **Id.** (internal alterations, quotation marks, and citations omitted).

As the parties' dispute is over the sale of goods between merchants, if Pennsylvania law applies, the Pennsylvania version of the Uniform Commercial Code ("UCC") applies. **See** 13 Pa.C.S.A. §§ 2104, 2105(a). If, on the other hand, Texas law applies, the Texas version of the UCC applies. **See** Tex. Bus. & Com. Code Ann. § 2.104, 2.105(a).

Key to the parties' dispute is what offer was made and what act constituted acceptance of that offer. The making of offers under the UCC is governed by UCC § 2-206. Pennsylvania and Texas have the same version of section 2-206.[3] **Compare** 13 Pa.C.S.A. § 2206 *with* Tex. Bus. & Com. Code Ann. § 2.206. As explained below, under both versions of section 2-206, when a second (or subsequent) offer is made which does not expressly incorporate the terms of a prior offer, the prior offer is considered revoked. Therefore, any terms and conditions that were part of the previous offer are no longer considered part of the new offer unless included therein or expressly incorporated by reference.

---

[3] The only difference between the two sections is hyphenation and titles.

In **Pro Spice, Inc. v. Omni Trade Grp., Inc.**, 128 F. App'x 836 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit interpreted Pennsylvania's version of section 2-206.[4]  In that case, Omni made an offer to Pro Spice via letter on December 3.  Three days later, on December 6, Omni made a second offer to Pro Spice via letter.  The December 6 letter included a higher price than the December 3 offer, although most of the other material terms remained the same.  The December 6 offer also did not explicitly revoke the December 3 offer.  Nonetheless, the United States Court of Appeals for the Third Circuit held that:

> Even assuming that the December 3 letter was an offer susceptible to a binding acceptance, Omni's subsequent December 6, 1999 letter revoked that offer by replacing it with a new offer. At oral argument, counsel for Pro Spice argued that Omni's December 6 letter had no legal effect on its December 3 "offer" because it did not alter any of the material terms of the proposed bargain. This argument underwhelms, as the December 6 letter presented new terms of delivery and, most notably, a higher price for the vanilla beans listed. Thus, even if Omni's December 3 letter was an offer, it was revoked[.]

**Id.** at 838.

We are unaware of any Texas cases that directly address section 2-206's application to the subsequent revocation of an initial offer by a new offer bearing different terms.  After careful examination of the text of the

---

[4] We were unable to find any Pennsylvania case that specifically discusses 13 Pa.C.S.A. § 2206.  Thus, we may look to federal case law for its persuasive value.  **Bensinger v. University of Pittsburgh Medical Center,** 98 A.3d 672, 682 n. 10 (Pa. Super. 2014) (citations omitted).

UCC, Texas common law, and decisions interpreting the UCC in other jurisdictions, we conclude that Texas law is the same as Pennsylvania law as it relates to revocation of an offer by a subsequent offer. First, as noted above, the text of section 2-206 adopted by Pennsylvania and Texas are identical. Thus, there is no textual reason to believe that the courts in Texas would treat a second offer differently than Pennsylvania courts.

Second, in Texas "[w]here the [UCC] does not address an issue, one should refer to the common law for guidance." *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 376 (5th Cir. 1980). Under Texas common law, a subsequent offer which contains different terms than a prior offer acts as a revocation of the prior offer. *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.2d 925, 928 (Tex. App. 1994). As Texas case law interpreting section 2-206 is silent on whether a subsequent offer revokes a prior offer, Texas common law indicates that a subsequent offer revokes a prior offer.

Finally, Texas courts interpret the UCC "to effect its general purpose to make uniform the law of those states that have enacted it." *Fetter v. Wells Fargo Bank Texas, N.A.*, 110 S.W.3d 683, 687 (Tex. App. 2003), *quoting* Tex. Gov't Code Ann. § 311.028; *see* Tex. Bus. & Com. Code Ann. § 1.103(a)(3). Our research indicates that the general consensus among states that have adopted the UCC is that a subsequent offer revokes a prior offer unless the prior offer is expressly incorporated therein. *See In re Wheeling-Pittsburgh Steel Corp.*, 360 B.R. 632, 639 (Bankr. N.D. Ohio

2006) (Michigan, Ohio, and Pennsylvania versions of UCC); *Pro Spice*, 128
F. App'x at 838; *Norca Corp. v. Tokheim Corp.*, 643 N.Y.S.2d 139, 141
(N.Y. App. Div. 1996), *citing* Restatement (Second) of Contracts § 43; *Mid-S. Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1121 (5th Cir. 1985)
(Mississippi version of UCC); *Ivey's Plumbing & Elec. Co., Inc. v. Petrochem Maint., Inc.*, 463 F.Supp. 543, 551 (N.D. Miss. 1978). Thus, if
Texas were to take a different position regarding the revocation of an offer
by a subsequent offer, then it would not make uniform the laws of the
several states.

For these reasons, we conclude that under Texas law a subsequent
offer revokes any prior offers unless the subsequent offer incorporates that
prior offer. As Pennsylvania and Texas law are identical on the issue, there
is no need to resolve the false conflict of laws in this case. We therefore
proceed with an analysis that is applicable under both Texas and
Pennsylvania law.

On appeal, the parties' dispute centers on whether the contract
included the governing law provision. As discussed above, under both
Texas and Pennsylvania law, if Aspro's December 7 proposal was in fact an
offer then it was revoked and replaced by Aspro's January 28 proposal
and/or January 29 quote since the latter proposal and quote differed from
the terms of the December 7 offer. Moreover, as we explain below, neither
the January 28 proposal nor the January 29 quote incorporated the terms of

the December 7 proposal. Furthermore, neither the January 28 proposal nor the January 29 quote attached Aspro's General Conditions of Supply for Products and Services.

We are unpersuaded by Pearce's contention that the January 28 proposal and January 29 quote incorporated Aspro's General Conditions of Supply for Products and Services. **See** Pearce's Brief at 10. The only reference to the December 7 proposal is a list of changes from that proposal. **See** Pearce's Preliminary Objections, 7/30/15, at Exhibit 2. Instead, we find persuasive the reasoning of the United States District Court for the Northern District of Oklahoma in **Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.**, 2010 WL 582205 (N.D. Okla. Feb. 10, 2010).

**Ben-Trei**, like the case at bar was governed by the UCC.[5] In **Ben-Trei**, the defendant circulated a request for quote ("RFQ") to several potential suppliers including, *inter alia*, the plaintiff. Attached to the emailed RFQ were the defendant's standard conditions. Those standard conditions included a forum selection clause. Plaintiff responded to defendant's first RFQ and a contract was formed between the parties which included the defendant's standard conditions.

Thereafter, the defendant sent the plaintiff five more RFQs in an attempt to form a second contract. The second, third, and fourth RFQs

_____

[5] The court declined to decide whether Florida or Oklahoma's version of the UCC was applicable because the statutes were identical.

included the defendant's standard conditions attachment. The fifth RFQ did not attach defendant's standard conditions but stated that they were attached. The sixth RFQs did not attach defendant's standard conditions and did not reference those standard conditions.

Plaintiff and defendant reached an agreement for the sale of goods pursuant to the sixth RFQ (which failed to attach defendant's standard conditions thereto). Eventually, a dispute arose under the contract and the plaintiff filed suit in Oklahoma. The defendant filed a motion to dismiss, arguing that the forum selection clause was part of the parties' contract and, therefore, venue was only proper in Florida.

The court held that the defendant's forum selection clause, which was included in an attachment to the first four emails, did not become part of the parties' contract which was based on the sixth RFQ that failed to attach the defendant's standard conditions. *Ben-Trei*, 2010 WL 582205 at *5. The court held that, because the sixth RFQ did not include the standard conditions, the only way that the conditions could be considered incorporated was through a prior course of dealing. *Id.* Furthermore, the lack of discussion between the parties regarding the standard conditions, including the forum selection clause, precluded a finding that there was such a course of dealing. *Id.* Thus, the defendant's standard conditions, including the forum selection clause, did not become part of the parties' contract. *Id.*

The facts in this case are even more extreme than those in ***Ben-Trei***. Aspro's standard conditions were only included in one email, instead of four like in ***Ben-Trei***. Moreover, in ***Ben-Trei*** the parties previously agreed to a contract which included the defendant's standard conditions while there is no evidence that Appellant and Aspro previously agreed to a contract which included Aspro's standard terms and conditions. As in ***Ben-Trei***, the parties in this case never discussed Aspro's standard terms and conditions, including the governing law provision, during negotiations. Although the sixth RFQ in ***Ben-Trei*** did not reference the defendant's standard conditions, the court implied that the fifth and sixth RFQs should be treated the same because they did not attach the defendant's standard conditions. ***See Ben-Trei***, 2010 WL 582205 at *5. The court focused instead on whether the attachment was included with the RFQ. As in ***Ben-Trei***, Aspro's standard conditions were not attached to the January 28 proposal or the January 29 quote. Thus, we conclude that, like in ***Ben-Trei***, Aspro's standard terms and conditions were not incorporated in Aspro's January 28 proposal or January 29 quote.

Finally, if Appellant's purchase order was the offer, it similarly did not include the governing law provision. Therefore, under both Pennsylvania and Texas law, the governing law provision was not included in the parties' contract. The trial court's decision to the contrary is unsupported by the record. As such, the trial court erred by declining to exercise jurisdiction

over Appellant's claims. We therefore reverse the trial court's order and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2016