Reuben **CORDERO**, Appellant Below, Appellant,

v.

**GULFSTREAM DEVELOPMENT CORPORATION, and Delaware Siding Company, Appellees Below, Appellees.**

No. 718, 2011.

Supreme Court of Delaware.

Submitted: Oct. 10, 2012.
Decided: Nov. 20, 2012.

Arthur M. Krawitz, Esquire (argued), Tara E. Bustard, Esquire, and Henry C. Davis, Esquire, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, Delaware, for Appellant.

John J. Ellis, Esquire (argued), and William Rimmer, Esquire, Heckler & Frabizzio, P.A., Wilmington, Delaware, for Appellee, Gulfstream Development Corporation.

Robert J. Richter, Esquire (argued), Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, for Appellee, Delaware Siding Company.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

Reuben Cordero, the appellant-below ("Cordero"), appeals from a Superior Court order affirming an order of the Industrial Accident Board ("Board") dismissing his petitions against a general contractor, Gulfstream Development Corporation ("Gulfstream"), and a Gulfstream subcontractor, Delaware Siding Company ("Delaware Siding"). On appeal, Cordero argues that the Superior Court reversibly erred in interpreting 19 *Del. C.* § 2311(a)(5). We disagree and AFFIRM.

### FACTS AND PROCEDURAL BACKGROUND

#### I. Facts

On July 31, 2008, Cordero was injured while working on a construction project in

Delaware as an employee of a Gulfstream sub-subcontractor, Rodriguez Contracting Company ("Rodriguez"). Gulfstream, the general contractor on the project, had subcontracted siding and roofing work to Delaware Siding. In turn, Delaware Siding had subcontracted the roofing work to Rodriguez. At no relevant time did either Gulfstream or Delaware Siding employ Cordero.

Before Cordero's injury, Rodriguez had furnished Delaware Siding with a certification of insurance dated February 26, 2008. The certification represented that Rodriguez held a valid workers' compensation insurance policy covering its employees for the period January 4, 2008 to January 4, 2009. Unbeknownst to Delaware Siding, the Rodriguez policy was cancelled on March 13, 2008. Two months later, on May 9, 2008, Rodriguez purchased a new, similar insurance policy that would remain in force until January 4, 2009. Unbeknownst to Delaware Siding, that policy was also later cancelled on July 10, 2008. Twenty-one days later, Cordero was injured while on the job, during the period that his employer, Rodriguez, had no workers' compensation insurance policy in effect.

Delaware Siding, for its part, furnished a certification of insurance to Gulfstream dated September 19, 2007. That certification represented that Delaware Siding held a workers' compensation insurance policy covering its employees for the period September 1, 2007 to September 1, 2008. There is no claim that Delaware Siding's workers' compensation insurance lapsed at any point during that period.

Because Rodriguez was uninsured at the time Cordero was injured, Cordero sought workers' compensation coverage under the Gulfstream and the Delaware Siding workers' compensation insurance policies. Gulfstream and Delaware Siding took the position that Cordero was not entitled to coverage under either policy. Cordero's entitlement to coverage under the Gulfstream or Delaware Siding policy was the issue litigated before the Board, and thereafter, before the Superior Court.

## II. Procedural Background

Before the Board, Cordero brought Petitions to Determine Compensation against Gulfstream and Delaware Siding under 19 *Del. C.* § 2311(a)(5).[1] That statute provides that:

> Any contracting entity shall obtain from an independent contractor or subcontractor and shall retain for 3 years from the date of the contract the following: a notice of exemption of executive officers or limited liability company members and/or a certification of insurance in force under this chapter. If the contracting entity shall fail to do so, the contracting entity shall not be deemed the employer of any independent contractor or subcontractor or their employees but shall be deemed to insure any workers' compensation claims arising under this chapter.[2]

Gulfstream and Delaware Siding moved to dismiss Cordero's petitions, on the ground that they had received certifications of insurance from their respective subcontractors as § 2311(a)(5) required.

By order dated February 10, 2011, the Board granted both contractors' motions to dismiss.[3] The Board held that because

---

1. 19 *Del. C.* § 2311(a)(5) (May 23, 2007).

2. *Id.*

3. *Cordero v. Gulfstream Dev. Corp. and Delaware Siding Co.,* IAB Hearing Nos. 1357959 and 1357671, at 5 (Feb. 10, 2011).

§ 2311(a)(5) is unambiguous, that statute must be applied according to its plain meaning.[4] The Board determined that nothing in § 2311(a)(5) can be read to impose upon a contractor an ongoing, affirmative duty to verify that its subcontractor's workers' compensation insurance coverage remains effective throughout the period disclosed on the subcontractor's certification of insurance.[5] The Board opined, however, that the contractor might be liable for a workers' compensation claim by a subcontractor's employee, in cases where the contractor either knew that the subcontractor's workers' compensation insurance coverage had lapsed, or otherwise had not acted in good faith.[6]

By opinion and order dated November 30, 2011, the Superior Court affirmed the Board's order denying Cordero's Petitions.[7] The court held that once a contractor has obtained a valid certification of insurance from its subcontractor, the contractor has "no affirmative obligation to follow up" on the subcontractor's workers' compensation insurance coverage.[8] The court, like the Board, cautioned that a contractor cannot "turn a blind eye" to a subcontractor's lack of workers' compensation insurance, or continually engage a subcontractor that it knows has a history of allowing its workers' compensation insurance coverage to lapse.[9] The court explained that § 2311(a)(5) imposes an implicit, good faith duty upon a contractor to

"verify" its subcontractor's workers' compensation insurance coverage by exercising "due diligence."[10] The court then concluded that Gulfstream and Delaware Siding had properly performed their due diligence obligations and, thus, were protected under § 2311(a)(5).

Cordero's appeal to this Court followed.

### ANALYSIS

On appeal, Cordero raises three claims. First, he argues that § 2311(a)(5) does not shield Gulfstream or Delaware Siding from liability to provide workers' compensation coverage to him, because those contractors did not establish a valid "contract date" with their respective subcontractors, as the statute requires. We conclude that Cordero waived this claim. Moreover, and in any event, the claim lacks merit.

■ Cordero's second claim is that even if § 2311(a)(5) applies, it requires a contractor unconditionally to provide workers' compensation insurance coverage to the employees of its subcontractor at all times.[11] We hold that the statute does not impose any such unconditional coverage requirement.

Cordero's third and final claim is that even if § 2311(a)(5) does not create or impose such a requirement explicitly, this Court should find that it imposes an implied obligation on a contractor to monitor,

4. *Id.* at 4.

5. *Id.* at 5.

6. *Id.* at 4 & n. 1.

7. *Cordero v. Gulfstream Dev. Corp. and Delaware Siding Co.*, C.A. No. 11A–03–003, 2011 WL 6157487, at *13 (Del.Super. Nov. 30, 2011).

8. *Id.* at *2.

9. *Id.* at *12.

10. *Id.* The court did not, however, particularize the content or scope of that good faith duty or due diligence requirement.

11. In his pleadings, Cordero alternatively argues that § 2311(a)(5) may be ambiguous, particularly in the meaning of its term "in force." He expressly maintained at this Court's oral arguments, however, that his sole contention is that the statute is unambiguous. We therefore assume that all the relevant parties concur in the unambiguous nature of § 2311(a)(5).

in good faith, its subcontractors' workers' compensation insurance coverage during the entire coverage period disclosed in the certification. We conclude that no such duty to monitor can be implied from the workers' compensation statute, except in the narrow circumstance where a contractor knows that its subcontractor has a history of allowing its insurance coverage to lapse before the coverage period expires.

This Court reviews a Superior Court decision that, in turn, has adjudicated a ruling of an administrative agency, by directly reviewing the agency decision [12] to determine if it is supported by substantial evidence and is free from legal error.[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [14] Absent an error of law or fact, we review the agency decision for abuse of discretion.[15] An agency abuses its discretion only where its decision "exceed[s] the bounds of reason in view of the circumstances." [16] We review questions of law and statutory interpretation *de novo*.[17]

### I. Cordero's Argument that § 2311(a)(5) Does Not Bar his Claim is Waived and, in Any Event, Lacks Merit.

Cordero first argues that Gulfstream and Delaware Siding never established a valid "contract date" for their projects with their respective subcontractors, as § 2311(a)(5) requires. Therefore,

he claims, Gulfstream and Delaware Siding cannot establish that they satisfied § 2311(a)(5) by retaining their subcontractors' certifications of insurance for three years "from the date of the contract." [18] As a consequence, § 2311(a)(5) does not apply or operate as a defense to his claims, and therefore, the case must be reversed and remanded for further proceedings under 19 *Del. C.* § 2311(a)(4).

We need not reach the "contract date" issue, because Cordero never presented it either to the Board or the Superior Court. His sole claim was that "[t]here was no written contract[ ] in this case between Delaware Siding and ... Rodriguez...." That factual statement—that there was no *written* contract—neither raised nor preserved Cordero's argument to us that there was no contract *date*. The claim is, therefore, waived.[19] In any event, the claim lacks merit, given the ample testimonial and other evidence of the contractual agreements under which Gulfstream and Delaware Siding, and Delaware Siding and Rodriguez, respectively, were operating.

### II. By its Plain Meaning, § 2311(a)(5) Does Not Impose Liability on a Contractor to Provide Workers' Compensation Coverage for the Employees of its Subcontractor, Where the Subcontractor has Furnished to the Contractor a Valid Certification of Insurance.

When engaging in statutory interpretation, this Court "ascertain[s] and

---

**12.** *Pub. Water Supply Co. v. DiPasquale,* 735 A.2d 378, 380–81 (Del.1999).

**13.** *Olney v. Cooch,* 425 A.2d 610, 613 (Del. 1981); *UIAB v. Duncan,* 337 A.2d 308, 308–09 (Del.1975).

**14.** *Olney,* 425 A.2d at 614.

**15.** *Person–Gaines v. Pepco Hldgs., Inc.,* 981 A.2d 1159, 1161 (Del.2009).

**16.** *Id.* (quotation omitted).

**17.** *Person–Gaines,* 981 A.2d at 1161; *Doroshow, Pasquale v. Nanticoke Mem. Hosp., Inc.,* 36 A.3d 336, 342 (Del.2012).

**18.** 19 *Del. C.* § 2311(a)(5) (May 23, 2007).

**19.** *See* Supr. Ct. R. 8.

give[s] effect to the intent of the legislature."[20] If the statute is unambiguous, the language of the statute controls.[21] Any undefined words are given their commonly understood, plain meaning.[22] We "read statutes by giving [their] language its reasonable and suitable meaning while avoiding patent absurdity."[23] When construing a statute, we must "give effect to the whole statute, and leave no part superfluous."[24]

Cordero argues that § 2311(a)(5) imposes an absolute obligation on contractors to insure the workers' compensation claims of their subcontractors' employees. Thus, Cordero contends, a contractor is automatically and ·unconditionally liable for a workers' compensation claim by its subcontractor's employee—irrespective of any certification of insurance furnished by the subcontractor—where the subcontractor fails to maintain workers' compensation coverage for the duration of its project.

Not surprisingly, Gulfstream and Delaware Siding dispute Cordero's interpretation. They agree that § 2311(a)(5) increased the scope of workers' compensation coverage. They argue, however, that the statute makes a contractor liable to insure a ·workers' compensation claim by a subcontractor's employee only in the limited circumstances specified in the statute. Stated differently, Gulfstream and Delaware Siding contend that § 2311(a)(5) does not create or impose absolute, unconditional liability

upon a contractor to provide workers' compensation coverage for its subcontractor's employees in all circumstances. As Gulfstream argues, Cordero's case is "an example of an injured employee that may be an exception to the general rule of increased coverage," and, thus, as one who would remain uninsured. Tellingly, despite their divergent interpretations of § 2311(a)(5), each side contends that the statute is unambiguous and must be construed in its favor.

 To repeat, § 2311(a)(5) provides that a contractor:

> [S]hall obtain from [a] subcontractor . . . and shall retain for 3 years from the date of the contract the following: . . . a certification of insurance in force under this chapter. If the [contractor] shall fail to do so, the [contractor] . . . shall be deemed to insure any workers' compensation claims. . . .[25]

This language cannot be considered in isolation. Rather, it must be read in conjunction with the immediately preceding section, § 2311(a)(4), which pertinently provides that:

> All independent contractors . . . shall be covered under this chapter. Independent contractors . . . shall be insured by the general contractor, subcontractor or other contracting entity for which they perform work or provide services.[26]

To reconcile subsection (a)(5) with subsection (a)(4), as this Court must do,[27] sub-

---

**20.** *French v. State,* 38 A.3d 289, 291 (Del. 2012).

**21.** *Id.*

**22.** *Id.*

**23.** *Doroshow, Pasquale v. Nanticoke Mem. Hosp., Inc.,* 36 A.3d 336, 343 (Del.2012) (internal quotations omitted).

**24.** *Id.* at 343–44 (citing *Keeler v. Harford Mut. Ins. Co.,* 672 A.2d 1012, 1016 (Del.1996)).

**25.** 19 *Del. C.* § 2311(a)(5) (May 23, 2007).

**26.** 19 *Del. C.* § 2311(a)(4).

**27.** *See Doroshow, Pasquale,* 36 A.3d at 343–44 (citing *Keeler v. Harford Mut. Ins. Co.,* 672 A.2d 1012, 1016 (Del.1996), where this Court held that when engaging in statutory interpretation, we must "give effect to the whole statute. . . .").

section (a)(5) must be understood and construed as a "safe harbor" from, or exception to, the liability imposed by subsection (a)(4).

By its plain language, § 2311(a)(5) imposes liability on a contractor to insure workers' compensation claims by its subcontractor's employees, *except* where the contractor obtains a valid certification of insurance from the subcontractor and retains the certification for three years. Nowhere does § 2311(a)(5) provide that the contractor's liability under § 2311(a)(4) is automatically reinstated if the subcontractor furnishes a valid certification of insurance, but later allows that insurance to lapse. Without statutory language evidencing a legislative intention to ordain such reinstatement, this Court cannot construe the statutory scheme to so require.

When read together with § 2311(a)(4), § 2311(a)(5) is a "safe harbor" that protects contractors from the automatic liability they would otherwise incur under § 2311(a)(4)'s universal coverage mandate. To come within that "safe harbor," a contractor must obtain a certification of insurance "in force" from its subcontractor and retain that certification for three years. A contractor that satisfies subsection (a)(5)'s statutory obligation is not legally responsible under subsection (a)(4) to provide workers' compensation insurance for the benefit of the employees of its subcontractor. A certification of insurance is "in force" if it is valid on its face at the time it is furnished to the contractor. We can safely presume that the General Assembly clearly intended that a certification "in force" at the time it is furnished would remain "in force" during its entire coverage period. That is how the system is intended to, and should, work. Regrettably, however, the General Assembly did not provide for the circumstance where the subcontractor's coverage lapses before the end of the period denoted in the certification. Our workers' compensation regime is entirely a creature of statute. Unless the statute so provides, either expressly or by clear implication, a contractor cannot be liable if its subcontractor (unbeknownst to the contractor) later allows its workers' compensation insurance policy to lapse.

We recognize that the result is to leave employees of subcontractors that allow their insurance coverages to lapse, uncovered by workers' compensation insurance. That unfortunate result can only be corrected by the General Assembly, because courts lack the constitutional power to rewrite the statute. That does not mean, however, that Cordero is without any legal remedy. If the workers' compensation scheme were available to him, he would be barred from recovering tort-based damages from his employer.[28] But if, through no fault of his own, Cordero cannot legally resort to the workers' compensation system, he is free to pursue whatever remedies are available to him under tort law.

### III. Section 2311(a)(5) Does Not Impose an Implied, Good Faith Obligation upon a Contractor to Monitor its Subcontractor's Workers' Compensation Insurance Coverage During the Entire Coverage Period.

The foregoing analysis leaves an unresolved question. Both the Board and the Superior Court opined that a contractor has an ongoing, good faith duty under § 2311(a)(5) to inquire into its subcontractor's workers' compensation insurance coverage, in cases where the contractor knows that its subcontractor has a history or practice of allowing its insurance coverage to lapse before the coverage period expires. In those narrow circumstances,

---

**28.** 19 *Del. C.* § 2304; *Grabowski v. Mangler,* 938 A.2d 637, 641 (Del.2007).

such a monitoring duty may be implied as a matter of statutory interpretation. We so conclude, because it cannot be supposed that the General Assembly intended to allow a contractor to rely upon a subcontractor's certification in circumstances where the contractor knows or has reason to believe the certification is false.

 But, what of the circumstance where the contractor does not know, and has no reason to suspect, any perfidy by the subcontractor? The statute does not address that question. In that broader set of circumstances, we cannot attribute to the General Assembly an intent to impose upon a contractor a duty to monitor and verify, on an ongoing basis, that a subcontractor's workers' compensation insurance remains in force. Stated differently, where a contractor neither knows nor has reason to believe that its subcontractor is submitting a certification that may thereafter become false, § 2311(a)(5) cannot reasonably be read to create and impose a duty upon the contractor to monitor continuously the veracity of its subcontractor's certification.

 In this case, Cordero did not present sufficient evidence that either Gulfstream or Delaware Siding knew or had reason to believe that the certification supplied by Rodriguez might later become false. Thus, § 2311(a)(5) imposed no greater requirements upon the contractors than to obtain and to retain (for three years) their subcontractor's certification of insurance that was facially valid at the time of its delivery. Both Gulfstream and Delaware Siding satisfied those requirements. Accordingly, the Superior Court did not err in affirming the Board's order granting their motions to dismiss Cordero's petitions.

## CONCLUSION

For the reasons stated above, we AFFIRM the Superior Court's judgment.