**Nicholas SHEARD, Appellee**

v.

**J.J. DeLUCA COMPANY,
INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 2013.
Filed May 7, 2014.

Edward M. Koch, Philadelphia, for appellant.

Patrick J. Connors, Public Defender, Media, for appellee.

BEFORE: GANTMAN, J., ALLEN, J., and OTT, J.

OPINION BY GANTMAN, J.:

Appellant, J.J. DeLuca Company, Inc., appeals from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellee, Nicholas Sheard, in this personal injury action. We reverse and remand with instructions.

The trial court opinion set forth the relevant facts as follows:

Based upon the totality of relevant evidence presented, it is reasonable to infer that the jury considered the following evidence when rendering its verdict:

Sometime in late 2007, [Appellee] was hired as a laborer at Delta Drywall ("Delta"). On the day of the incident, January 10, 2008, [Delta] was a subcontractor and [Appellant] was the general contractor of a construction project site located in Justison Landing, Wilmington, Delaware. [Appellee]'s duties included, *inter alia*, gathering and distributing supplies to areas where paper and Sheetrock/drywall was being installed, and cleaning up for the next contractor. [Appellee] testified that neither [Delta] nor [Appellant] provided him with any safety training or information pertaining to any safety policies or programs regarding his duties.

On the day of the incident, [Appellee] testified that a portion of the drywall project was near completion but for certain areas on the third floor that had to be redone. This entailed demolishing the drywall, breaking it down into scrap, discarding it, and cleaning the area before the new drywall could be installed.

At the time, [Appellee] and his partner, Jamar Williams, were told to remove all the construction debris on the third floor. Together, they loaded the drywall scraps onto a trash cart (a box on wheels) and a handcart (an apparatus that vertically holds up the drywall), and pushed these carts down the hallway into an apartment that had an opened balcony door. It was their intention to dispose of the debris through the open balcony door. With that in mind, Mr. Williams went outside to serve as the lookout person to ensure that no one walked into the debris being thrown out the overhead opened balcony door.

[Appellee] further testified that within 10 or 15 minutes after he commenced discarding the debris, [Appellant]'s site

superintendent and job safety officer, Arthur Paquin, noticed him throwing debris, yelled up at him, and cautioned him not to throw the drywall onto the newly poured sidewalk. Mr. Paquin, however, recalls the event differently, and testified that he did not yell up to [Appellee] but, instead, went up to the third floor and repeated to [Appellee] that [Appellee] "can't be doing this," and left. [Appellee] denies that Mr. Paquin went to the third floor and personally told him to stop throwing drywall out the opening.

Notwithstanding, whether [Appellee] was admonished from the ground or personally on the third floor, [Appellee] testified that he responded that it would require more effort to throw the drywall out the balcony, miss the sidewalk below and land on the grass. Nevertheless, [Appellee] continued throwing the drywall out the balcony in a harder fashion to avoid the sidewalk. As he was attempting to throw a piece of drywall measuring three feet by five feet, a screw caught his sweatshirt. Somehow, the momentum of [Appellee] hurling the drywall and his sweatshirt being caught by the screw propelled him out through the balcony opening, causing him to fall 22 feet and land partially on the sidewalk, on his right side. Following his fall, [Appellee] momentarily stood up, attempted to walk, but fell back down. He was still conscious when people rushed to assist him.

[Appellee] was rushed via ambulance to Christiana Hospital in Wilmington, Delaware, where he was admitted through the trauma unit. He remained hospitalized until January 13, 2008. [Appellee] was diagnosed with significant injuries to his pelvis and lower back area.

(Trial Court Opinion, filed September 5, 2012, at 1–4).

On December 29, 2009, Appellee sued Appellant for negligence. Appellant filed its answer and new matter on March 31, 2010, which it endorsed with a notice to plead. In its new matter, Appellant asserted the Pennsylvania Workers' Compensation Act precluded Appellee's action. On April 28, 2010, Appellee filed a reply in the nature of a general denial to all averments in the new matter. (*See* Plaintiff's Reply to Defendant's New Matter, 4/18/10, at 1; R.R. at 42a) (stating: "All allegations in paragraphs 18 through 40 are denied as conclusions of law to which no response is necessary under the Pennsylvania Rules of Civil Procedure. To the extent that a response may be necessary, the allegations are denied and strict proof is demanded at time of trial").

The case ultimately proceeded to a jury trial. On November 3, 2011, the jury rendered a verdict in favor of Appellee, awarding $2,004,001.00 in damages and apportioning 80% of the fault to Appellant and 20% to Appellee. Appellee filed a post-trial motion for delay damages on November 9, 2011. On November 14, 2011, Appellant filed its post-trial motion for a new trial, a new trial only on damages, or *remittitur*, reserving the right to supplement the motion with new bases for relief upon receipt and review of the notes of testimony.

Appellant moved to amend its post-trial motion to request judgment notwithstanding the verdict ("JNOV") on January 11, 2012, and filed a supporting memorandum of law. In its motion, Appellant re-asserted statutory employer immunity under the Workers' Compensation Act, contending its objection was viable and non-waivable. Appellant sought leave to amend its post-trial motion to seek JNOV.

Appellee filed an answer in opposition to Appellant's post-trial motion. In its answer Appellee admitted Appellant "charac-

terized itself" as a general contractor and also admitted there was testimony that Delta was Appellant's subcontractor. Appellee denied any evidence was introduced "to establish what that title entailed or what its exact relationship was with [Appellant]." (*See* Plaintiff's Answer to Defendant's Motion to Amend its Post–Trial Motion, 1/20/12, at 2; R.R. at 1040a). Appellee contended the trial court should ignore the "subcontract between DeLuca and Delta" attached to Appellant's motion to amend its post-trial motion because "it was never introduced into evidence at trial and was never considered by the jury." (*Id.*). Additionally, Appellee averred Appellant's reliance on Pennsylvania's statutory employer immunity is misplaced, because Delaware law applied to the claim of statutory employer immunity. In its accompanying memorandum of law, Appellee claimed "there is no provision for a 'statutory employer' defense" under Delaware law. (*See* Memorandum of Law, 1/26/12, at 5; R.R. at 1053a). The court held oral arguments on January 27, 2012. At that time, the court denied Appellant's January 2012 motion to amend the post-trial motion. The court stated:

> Very well. Having heard the arguments on this motion from this court's perspective it appears to either have been a strateg[ic] decision not to have argued statutory employer, or a complete oversight on counsel's—on counsel, period. Therefore, this motion is denied. It's deemed to have been waived by failure to have presented evidence on this issue.

(N.T. Post–Trial Motions, 1/27/12, at 12–13; R.R. at 1106a). On February 2, 2012, the court entered separate orders (1) granting Appellee's motion for delay damages and (2) denying Appellant's earlier November 2011 motion for post-trial relief. Subsequently, the court entered judgment on the verdict in favor of Appellee as a

final molded award of $1,684,511.63 on February 8, 2012.

Appellant timely filed a notice of appeal on March 7, 2012. On March 8, 2012, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on March 26, 2012.

Appellant raises seven issues for our review:

> SHOULD [APPELLANT] HAVE BEEN PERMITTED TO AMEND ITS MOTION FOR POST–TRIAL RELIEF TO REQUEST JUDGMENT NOTWITHSTANDING THE VERDICT ON STATUTORY EMPLOYER IMMUNITY BECAUSE SUCH IMMUNITY DEFENSES ARE NOT WAIVABLE?
>
> SHOULD [APPELLANT] BE AWARDED JUDGMENT NOTWITHSTANDING THE VERDICT ON THE STATUTORY EMPLOYER DEFENSE WHERE IT IS APPARENT FROM THE RECORD THAT THE STATUTORY EMPLOYER DEFENSE IS APPLICABLE OR, IN THE ALTERNATIVE, A REMAND FOR A SHORT EVIDENTIARY HEARING IS NECESSARY TO PREVENT THE IMPROPER EXECUTION OF A TORT JUDGMENT UPON AN EMPLOYER IMMUNE FOR TORT SUIT UNDER THE WORKER'S COMPENSATION ACT?
>
> SHOULD [APPELLANT] BE AWARDED A NEW TRIAL WHEN THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING [APPELLEE'S] COUNSEL TO ARGUE TO THE JURY THAT OSHA CITATIONS AGAINST [APPELLANT] WERE DELETED AS A RESULT OF SOME "DEAL," WHEN SUCH AN ARGUMENT WAS FALSE AND CREATED FROM WHOLE CLOTH?

SHOULD [APPELLANT] BE AWARDED A NEW TRIAL WHEN THE TRIAL COURT FAILED TO CHARGE THE JURY ON [APPELLANT'S] DEFENSE OF ASSUMPTION OF THE RISK WHERE THERE WAS EVIDENCE THAT [APPELLEE] WAS AWARE OF THE RISKS OF THROWING DRYWALL OUT OF A THIRD–STORY BUILDING UNDER CONSTRUCTION?

SHOULD [APPELLANT] BE AWARDED A NEW TRIAL WHEN THE TRIAL COURT FAILED TO CHARGE THE JURY THAT [APPELLANT] CANNOT BE LIABLE FOR FAILING TO GUARD AGAINST AN OPEN AND OBVIOUS DANGER THAT WAS PRESENTED BY THROWING DRYWALL OUT OF A THIRD–STORY BUILDING UNDER CONSTRUCTION?

SHOULD [APPELLANT] BE AWARDED A NEW TRIAL WHEN THE JURY'S APPORTIONMENT OF ONLY 20% NEGLIGENCE TO [APPELLEE] WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE?

SHOULD THE COURT ORDER *REMITTITUR* OR A NEW TRIAL AS TO DAMAGES ONLY BECAUSE THE JURY'S TWO–MILLION DOLLAR VERDICT AWARD IS CONTRARY TO THE EVIDENCE, AS THE EVIDENCE ADDUCED AT TRIAL REVEALED THAT [APPELLEE'S] INJURIES WERE MINIMAL, HE CONTINUES TO WORK PRODUCTIVELY, AND HE SUSTAINED JUST $36,000 OUT–OF–POCKET EXPENSES?

(Appellant's Brief at 6–7).

For purposes of our review, we combine Appellant's issues one and two. First, Appellant contends it did not "waive" its claim to statutory employer immunity. Appellant notes it initially raised the preclusive effect of the Pennsylvania Workers' Compensation Act in its answer and new matter. Moreover, Appellant asserts this immunity is not waivable and may be raised at any time. Appellant argues the trial court improperly fashioned a new test for preservation of statutory employer immunity. Appellant describes the court's test as comprising two elements: (1) immunity under the Workers' Compensation Act must be "timely" asserted; (2) immunity must be "actively pursued" at a time when the court or jury can conveniently resolve any factual issues. Appellant concludes the court's new rule is contrary to established law on statutory employer immunity.

Second, Appellant disputes that Delaware law applies to the statutory employer issue. Appellant contends it is immune from suit by a subcontractor's employee as a statutory employer under Pennsylvania law. Appellant concedes the injury occurred in Delaware but asserts that fact alone does not settle the issue of which state's law applies. Appellant contends Appellee first asserted a conflict of law in his answer to Appellant's motion to amend post-trial motions to request JNOV. Appellant observes Appellee previously applied Pennsylvania law to all substantive issues. Appellant avers Pennsylvania was the place of the subcontract, and the subcontract between Appellant and Delta expressly provides that Pennsylvania law governs. Appellant pulls case law from other jurisdictions, which held the place of the alleged injury does not necessarily control the choice of law in matters involving statutory employer immunity.

Appellant also contends it is a statutory employer under Pennsylvania law. Appellant asserts there was no dispute in this case over its role as general contractor

and construction manager. Appellant notes this conclusion is consistent with the testimony of Appellee's expert, Appellant's witness, and the omission of any contrary evidence in the record. Appellant observes there was also no dispute that Delta employed Appellee. Further, the subcontract between Appellant and Delta established their relationship as general contractor and subcontractor. Relatedly, Appellant contends the trial court improperly ignored the subcontract, as though it were not part of the certified record. In all, Appellant concludes the claim of statutory employer immunity was not waived, and Appellant is entitled to statutory employer immunity under Pennsylvania law.[1] We agree.

 Initially, we observe:

There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Holt v. Navarro*, 932 A.2d 915, 919 (Pa.Super.2007), *appeal denied*, 597 Pa. 717, 951 A.2d 1164 (2008). "When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict.... Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact.... A JNOV should be entered only in a clear case." *Id.*

### STATUTORY EMPLOYER IMMUNITY AND WAIVER

Our Supreme Court recently reinforced the established doctrine of statutory employer immunity:

Pursuant to Section 302(b) of the Workers' Compensation Act,[1] 77 P.S. § 462, general contractors bear secondary liability for the payment of workers' compensation benefits to injured workers employed by their subcontractors. *See McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294–95, 153 A. 424, 426 (1930). In this sense, general contractors have been denominated "statutory employers" relative to workers' compensation liability, although they are not common-law employers of subcontractor employees. *Id.* at 292, 153 A. at 425. The Legislature's purpose in imposing this status upon general contractors was remedial, as it wished to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors.

---

[1] Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1, 2501–2626) (the "WCA" or the "Act").

Concomitant with the treatment of traditional employers, statutory employers under Section 302(b) enjoy a measure of immunity from liability in tort pertaining to work-related injuries for which they bear secondary liability under the

---

1. Appellant seeks, at a minimum, an evidentiary hearing on the issue of statutory employer immunity. In our view, the parties developed a competent record sufficient to address this issue of law.

Act. *See* 77 P.S. § 52 (embodying Section 203 of the Act); *see also* 77 P.S. § 481(a) (providing that liability of employers under the WCA serves as an exclusive remedy). This Court has previously determined that this immunity pertains by virtue of statutory-employer status alone, such that it is accorded even where the statutory employer has not been required to make any actual benefit payments. *See Fonner v. Shandon, Inc.*, 555 Pa. 370, 380, 724 A.2d 903, 907 (1999).

*Patton v. Worthington Associates, Inc.*, —— Pa. ——, ——, 89 A.3d 643, 645 (Pa. 2014) (some internal citations and footnotes omitted).

■■■ As a general rule, absent any concession, the status of an individual (*e.g.* "general contractor," "independent contractor," "subcontractor") presents a question of law. *Id.* at 648–49. "[P]er the terms of Section 302(b), a conventional relationship between a general contractor maintaining control of a jobsite and a subcontractor implicates the statutory employer concept relative to employees of the subcontractor working there." *Id.* at 648 (citing *McDonald, supra* at 293–97, 153 A. at 426–27).

Our Supreme Court has also held:

[T]he Work[ers'] Compensation Act deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely pled. The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court *sua sponte* if necessary. To the extent that prior appellate decisions have held to the contrary, they are expressly overruled.

*LeFlar v. Gulf Creek Indus. Park No. 2*, 511 Pa. 574, 581, 515 A.2d 875, 879 (1986) (internal citation omitted). *See also*

*Shamis v. Moon*, 81 A.3d 962, 970 (Pa.Super.2013).

■■■ "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law." *Midwest Financial Acceptance Corp. v. Lopez*, 78 A.3d 614, 627 (Pa.Super.2013) (citation omitted). "By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred." *Mid–City Bank & Trust Co. v. Myers*, 343 Pa. 465, 469, 23 A.2d 420, 423 (1942) (citing *Cooper v. Reynolds*, 77 U.S. 308, 316, 19 L.Ed. 931, 932, 10 Wall. 308, 316 (1870)).

Our Supreme Court extended *LeFlar* to allow the initial assertion of sovereign immunity, even in a petition for reargument following the Supreme Court's adjudication of an appeal to that Court. *See Tulewicz v. Southeastern Pennsylvania Transp. Authority*, 529 Pa. 588, 592–94, 606 A.2d 427, 428–29 (1992) (citing *LeFlar, supra; In re Upset Sale*, 522 Pa. 230, 560 A.2d 1388 (1989)). Nevertheless, "nonwaivable" issues must still be raised within the scope of the proceedings. *See Bell v. Kater*, 943 A.2d 293 (Pa.Super.2008), *appeal denied*, 599 Pa. 679, 960 A.2d 454 (2008) (finding waiver of co-employee workers' compensation immunity, when it was first asserted eleven months following denial of petition for Supreme Court review, because it was no longer timely); *City of Philadelphia Police Dept. v. Civil Service Com'n of City of Philadelphia*, 702 A.2d 878, 880 n. 3 (Pa.Cmwlth.1997) (finding waiver of governmental immunity when first raised after conclusion of proceedings, to frustrate collection of final judgment).

Once the litigation and all appellate avenues are exhausted, the court is no longer competent to address what was otherwise non-waivable immunity. *Bell, supra.* As long as the proceedings continue, however, even throughout the appellate process, the relevant court may consider a claim of statutory employer immunity in the first instance. *Tulewicz, supra.*

## CHOICE OF LAW

As a general rule, the law of the chosen forum governs all procedural matters. *Commonwealth v. Sanchez,* 552 Pa. 570, 716 A.2d 1221 (1998). A dispute concerning the applicable substantive law, however, compels a choice of law analysis. *Wilson v. Transport Ins. Co.,* 889 A.2d 563, 571 (Pa.Super.2005). "Substantive law is the portion of the law which creates the rights and duties of the parties to a judicial proceeding, whereas procedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced." *Id.* A court conducts the choice of law analysis under the choice of law rules of the forum state. *See Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 21, 203 A.2d 796, 805 (1964).

A Pennsylvania choice of law analysis includes a preliminary test: "the first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Budtel Associates, LP v. Continental Cas. Co.,* 915 A.2d 640, 643 (Pa.Super.2006).

§ 5327. Determination of foreign law

(a) Notice.—A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable written notice.

(b) **Materials to be considered.**—In determining the law of any jurisdiction or governmental unit thereof outside this Commonwealth, the tribunal may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence.

(c) **Court decision and review.**—The court, not jury, shall determine the law of any governmental unit outside this Commonwealth. The determination of the tribunal is subject to review on appeal as a ruling on a question of law. 42 Pa.C.S.A. § 5327. To ascertain the law of a sister state, a tribunal may judicially notice the foreign law, and may inform itself of such law by considering any relevant material or source, regardless of whether it was submitted under the rules of evidence. 42 Pa.C.S.A. § 5327(b). The operation of foreign law presents a question of law, rather than fact. 42 Pa.C.S.A. § 5327(c).

After ascertaining the law, the court conducts a case-by-case analysis. *Budtel Associates, LP, supra.* "[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." *Titeflex Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA,* 2014 PA Super 43 *6–7, 88 A.3d 970 (March 5, 2014) (quoting *Williams v. Stone,* 109 F.3d 890, 893 (3rd Cir.1997), *cert denied,* 522 U.S. 956, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997)). If the court finds a true conflict exists, the court must then decide which state has the greater interest in the application of its law, including which state had the most significant contacts or relationship to the action. *Budtel Associates, LP, supra.*

The Delaware Workers' Compensation Act is codified at 19 Del.C. §§ 2301–

2397. Under Delaware law, a general contractor bears workers' compensation liability for its subcontractor's injured workers, if the general contractor fails to ensure its subcontractor obtained workers' compensation coverage for the subcontractor's employees. *See Cordero v. Gulfstream Development Corp.*, 56 A.3d 1030, 1037 (Del. 2012). Generally, if compensation under the Act is unavailable to an injured worker, he may proceed at tort law. *See id.* So long as workers' compensation coverage is available, however, Section 2304 of the Delaware act provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence **and to the exclusion of all other rights and remedies.**

19 Del.C. § 2304 (emphasis added).[2]

■■ Delaware designates contractors and subcontractors as "employers" by operation of statute:

> **§ 2311. Contractors, subcontractors, independent contractors and lessees of motor vehicles transporting passengers for hire as employers**
>
> (a) Notwithstanding any other provisions in this chapter, including but not limited to the definitions of "employer" and "employee" in § 2301 of this title, the following provisions shall apply to persons who are licensed as contractors under Chapter 25 of Title 30 or persons shown to be conducting business in a manner in which they should be so licensed:
>
> (1) **Any contractor or subcontractor shall be deemed to be an employer.**

> Any and all rights of compensation of employees of contractors or subcontractors shall be against the employer contractor or subcontractor and not against any other employer.

19 Del.C. § 2311 (emphasis added). Chapter 25 of Title 30 of the Delaware Code provides, in pertinent part:

> "Contractor" includes every person engaged in the business of:
>
> a. Furnishing labor or both labor and materials in connection with all or any part of construction, alteration, repairing, dismantling or demolition of buildings, roads, bridges, viaducts, sewers, water and gas mains and every other type of structure as an improvement, alteration or development of real property; **a person is a contractor regardless of whether the person is a general contractor or a subcontractor, or whether the person is a resident or a nonresident. . . .**

30 Del.C. § 2501 (emphasis added). In this sense, a general contractor is an "employer" by operation of Delaware statutory law, even though the general contractor is not a common law employer of a subcontractor's employees. *See* 19 Del.C. § 2311; 30 Del.C. § 2501. In exchange for providing workers' compensation coverage to an injured worker, traditional employers receive a measure of immunity from common law liability. *See* 19 Del.C. §§ 2304, 2311(a)(5). Delaware's statutory scheme endeavors to ensure workers' compensation insurance is available to employees by shifting some degree of enforcement responsibility to general contractors, who then benefit from a corresponding immunity. *See* 19 Del.C. § 2311; 30 Del.C. § 2501; *Cordero, supra.*

■■ Instantly, whether Appellant waived statutory employer immunity pres-

---

**2.** The relevant portions of the Delaware statute became effective January 17, 2007.

ents a question of Pennsylvania procedural law. *See Wilson, supra* (noting procedural law concerns steps by which parties may have their respective rights and duties judicially enforced). *See also Sanchez, supra* (observing forum law applies to procedural issues). In its new matter, Appellant pled strict statutory employer immunity under the Workers' Compensation Act. In its reply, Appellee broadly denied the assertion without more. The case proceeded to trial. Neither Appellant nor Appellee addressed the issue at trial. Post-trial, the court said Appellant's dilatory pursuit of statutory employer immunity made its application unjust, and concluded Appellant had waived the claim. Consequently, the court did not confront the question of subject matter jurisdiction.

Appellant's assertion of statutory employer immunity, however, implicated the trial court's competency to hear and decide this action. *See LeFlar, supra* at 581, 515 A.2d at 879; *Midwest, supra.* Owing to its foundational nature, plus the fact that the proceedings were still open, we conclude Appellant did not waive the issue of immunity. *See id.* In fact, both parties fully briefed the issue in post-trial motions and were given the opportunity to conduct oral argument on the issue. Whether the immunity issue was presented to a jury is irrelevant, because statutory employer immunity, interpretation of contracts, or vertical privity of the individuals and entities, are all questions of law. *See Patton, supra.* Thus, Appellant did not waive statutory employer immunity.

■ Regarding whether there exists a "true conflict" of law in this case, we initially apply Delaware law. The record makes clear (1) Appellee was indisputably injured in an accident arising out of and in the course of his employment; (2) Appellee actually received workers' compensation, which demonstrates the workers' compensation scheme was available to him; (3) Appellee was an employee of the subcontractor, Delta. Under Delaware law, Appellant is a "contractor," notwithstanding its status as general contractor or its residency in Pennsylvania. *See* 30 Del.C. § 2501; 19 Del.C. § 2311(a). As a contractor, Appellant is deemed an employer by operation of statute. *See* 19 Del.C. § 2311(a)(1). Therefore, Appellee's exclusive remedy at Delaware law was workers' compensation. *See* 19 Del.C. § 2304. Because Appellee was able to obtain workers' compensation, Section 2304 would bar him from recovering any damages in tort from any statutory employer. *See id.; Cordero, supra.* Consequently, Delaware law would preclude Appellee's common law negligence claim against Appellant. Therefore, the trial court erred when it concluded Delaware law does not provide for statutory employer immunity, as the trial court overlooked Delaware's straightforward statutory scheme.

■ Under Pennsylvania law, Appellant is a general contractor. (*See* Trial Court Opinion at 2). To the extent Appellee attempts to dispute this conclusion on appeal, Appellee's own complaint averred Appellant undertook construction management responsibilities for the project and was responsible for control of the jobsite. (*See* Complaint, 12/29/09, ¶¶ 3, 7–8; R.R. at 28a). Appellee's averment demonstrates Appellant's status as a general contractor. *See Patton, supra* at 645. Delta is a subcontractor. (*See* Subcontract, dated 8/8/07; R.R. at 961a).[3] Appellee concedes he was an employee of Delta. Thus, we have no genuine dispute as to the status of each individual. This conventional rela-

---

**3.** To the extent Appellee counters the subcontract was not part of the record, Appellant

attached the subcontract as an exhibit to its January 2012 motion. In doing so, Appellant

tionship between Appellant as general contractor maintaining control of a jobsite and Delta as subcontractor, implicates the statutory employer concept relative to employees of the subcontractor working there, including Appellee. *See Patton, supra* at 648. Based on the vertical privity of the parties in this case, Appellant is Appellee's statutory employer. Because the record establishes Appellant was Appellee's statutory employer under Pennsylvania's Workers' Compensation Act, statutory employer immunity would preclude Appellee's common law suit in negligence against Appellant. *See id.*

Delaware law and Pennsylvania law produce the same result, and both would preclude this action. Thus, we have no "true conflict" between the laws of the competing states.[4] *See Titeflex, supra; Budtel Associates, LP, supra.* Thus, our choice of law inquiry concludes and Pennsylvania law applies to this case. *See id.* Given that Appellant is a statutory employer under Pennsylvania law and Pennsylvania law applies in this case, Appellant is entitled to statutory employer immunity for injuries Appellee suffered at the worksite. Consequently, the trial court lacked subject matter jurisdiction over Appellee's common law tort claim against Appellant.[5]

Based upon the foregoing, we hold (1) Appellant did not waive statutory employer immunity; (2) this case presents no "true conflict" between Delaware law and Pennsylvania law; (3) Pennsylvania law applies to the assertion of statutory employer immunity; and (4) Appellant was entitled to JNOV by way of statutory employer immunity, due to its status as general contractor and Appellee's status as a subcontractor's employee. Accordingly, we reverse and remand for the entry of judgment in favor of Appellant.

Judgment reversed; case remanded with instructions. Jurisdiction is relinquished.

---

made the exhibit part of the record. Appellee does not dispute that the attached subcontract was a true and correct copy of the original or make any effort to strike the subcontract from the record. We also observe the obligations imposed in the subcontract between Appellant and Delta demonstrate, on the face of the contract, Delta's status as subcontractor and note Appellee conceded there was testimony at trial that Delta was a subcontractor. (*See* Plaintiff's Answer to Defendant's Motion to Amend its Post–Trial Motion, 1/20/12, at 2; R.R. at 1040a). Moreover, the trial court acknowledged Delta's status as subcontractor. (*See* Trial Court Opinion at 2).

4. Neither party contends New Jersey law applies, albeit Appellee's home state and the state where Appellee actually received workers' compensation benefits. *See generally* 42 Pa.C.S.A. § 5327(a) (stating: "A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable written notice").

5. In light of our disposition, we need not reach Appellant's remaining issues.