# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Atlantic Building Associates, | ) | |
| | ) | |
| Appellant/Employer-Below, | ) | |
| | ) | |
| v. | ) | C.A. No.: N18A-08-006 SKR |
| | ) | |
| Julio Garcia Trujillo, | ) | |
| | ) | |
| Appellee/Employee-Below. | ) | |

Submitted: January 7, 2019
Decided: April 3, 2019

*Upon Appeal from the Industrial Accident Board*:
REVERSED AND REMANDED.

Andrew J. Carmine, Esq., Elzufon Austin & Mondell, Attorney for Appellant.

Arthur M. Krawitz, Esq., Tara E. Bustard, Esq., Doroshow, Pasquale, Krawitz & Bhaya, Attorneys for Appellee.

**Rennie, J.**

## <u>MEMORANDUM OPINION</u>

Before the Court is an appeal from an August 2, 2018 decision of the Industrial Accident Board (the "Board" or "IAB").[1] This appeal originated from Julio Garcia Trujillo's (claimant-below, "Trujillo") petition for workers' compensation benefits

---

[1] Notice of Appeal from 8/2/2018 Industrial Accident Board Decision (Trans. ID. 62381427).

against Atlantic Building Associates ("Atlantic"). In its first decision, the Board found Atlantic not liable for Trujillo's workers' compensation claim.[2] The Court reversed that decision on appeal, finding that the Board applied an incorrect legal standard to the case.[3] On remand, the Board found Atlantic liable for Trujillo's claim.[4] Atlantic promptly appealed. Now before the Court is this second appeal of the Board's decision. The issue involved here is a purely legal one: whether the IAB, on remand, applied the legal standard as instructed by the Court in its previous opinion. The Court finds that it did not and hereby REVERSES AND REMANDS.

## I. FACTUAL AND PROCEDURAL BACKGROUND[5]

Trujillo was an employee of Gaston Santos Bautista d/b/a Santos Construction ("Santos").[6] On April 9, 2014, Trujillo was injured while performing framing work for Santos on a construction site located in Millville, Delaware.[7] The framing work Trujillo conducted for Santos was subcontracted by WVM Construction ("WVM"), and WVM was subcontracted by Atlantic.[8] Trujillo filed Petitions to Determine

---

[2] Record on Appeal ("R. on Appeal"), Tab 7, Industrial Accident Board's April 13, 2016 Decision ("First IAB Decision").
[3] *Trujillo v. Atl. Bldg. Assocs.*, 2017 WL 2591409 (Del. Super. June 7, 2017).
[4] R. on Appeal, Tab 12, Industrial Accident Board's August 2, 2018 Decision ("Second IAB Decision").
[5] The Court will give only a brief review of the facts in this case, as they are largely undisputed and not material in resolving the legal question involved in this appeal. For a more detailed recitation of the facts, please refer to the Court's previous opinion and the two IAB decisions.
[6] *Trujillo*, at *1 n.2.
[7] *Id.* at *1–2.
[8] *Id.* at *1. It is not clear from the record whether Santos worked directly for or was subcontracted by WVM. *Id.* at *1 n.3.

2

Compensation Due against Santos, WVM, and Atlantic.[9] Santos never responded to Trujillo's petition.[10] And Liberty Mutual, WVM's workers' compensation policy carrier, denied coverage for Trujillo's claim.[11] Although the Liberty Mutual policy was in effect at the time of Trujillo's injury, it was a New Jersey policy that did not apply to Trujillo' accident, which occurred in Delaware.[12] Hence, this case is now solely between Trujillo and Atlantic.

Trujillo seeks workers' compensation benefits against Atlantic pursuant to 19 *Del. C.* § 2311(a)(5). This statute requires a contracting entity to obtain from its subcontractor, upon signing a contract, "a notice of exemption of executive officers or limited liability company members and/or a certification of insurance in force under this chapter."[13] If it fails to do so, the contracting entity is deemed to insure any workers' compensation claims that arise from such failure.[14] Trujillo's workers' compensation claim against Atlantic is based on the premise that Atlantic failed to obtain from its subcontractor, WVM, a certification of insurance that was "in force under [Chapter 23 of Title 19]" of the Delaware Code.[15]

---

[9] *Id.* at *1.

[10] First IAB Decision at 2.

[11] Atlantic Building Associates' Opening Brief at 2 ("Opening Br.") (Trans. ID. 62570289).

[12] *Id.*

[13] 19 *Del. C.* § 2311(a)(5).

[14] *Id.* The legislative intent behind this statute was to provide additional protection to employees and to "put the onus on the general contractors to make sure that their subcontractors had coverage for workers' compensation liability." *McKirby v. A & J Builders, Inc.*, 2009 WL 713887, at *4 (Del. Super. Mar. 18, 2009).

[15] The "notice of exemption" part of the statute is not at issue in this case.

There is no dispute that WVM's insurance broker, AVS Insurance Agency, provided Atlantic with a certificate of insurance ("COI") which indicated that WMV had worker's compensation coverage.[16] The COI contained, among other things, a policy number, the amount of insurance coverage, and effective dates of November 25, 2013 through November 25, 2014.[17] But it did not evidence the States to which the coverage extended.[18] In addition to receiving the COI, Atlantic checked the Delaware Division of Revenue's website and saw that WVM had a 2014 Delaware business license.[19]

The IAB held a hearing in this matter and issued a decision on April 13, 2016. Relying on *Cordero v. Gulfstream Development Corp.*,[20] the Board found that the COI provided by WVM to Atlantic was "valid on its face."[21] Despite the fact that the COI did not delineate which States were covered under WVM's policy, the Board found that Atlantic "acted in good faith and satisfied [] due diligence requirements" in exercising its duties under § 2311(a)(5), and that there were no "red

---

[16] *Trujillo*, at *2.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] 56 A.3d 1030 (Del. 2012) (*Cordero* involved a subcontractor that allowed its workers' compensation policy to lapse after furnishing the contractor with a COI. The Delaware Supreme Court held that the contractor did not have a continuing duty to ensure the validity of the insurance as long as the COI initially furnished was valid on its face as to the effective dates of the policy. The territorial applicability of the policy was not an issue in *Cordero*.)
[21] First IAB Decision at 21–22.

4

flags" that would have put Atlantic on notice that WVM did not have Delaware coverage.[22]

On June 7, 2017, this Court reversed the IAB's decision. The Court held that the Board applied an incorrect legal standard when it found the COI facially valid.[23] Specifically, the Court found that the plain language of the statute, which requires a COI "in force under [Chapter 23 of Title 19]," demonstrates that there must be workers' compensation coverage that is applicable in Delaware. It concluded that since the COI furnished to Atlantic did not indicate that it applied to work performed in Delaware, it "cannot be valid on its face as to this critical fact."[24] The Court then remanded this case for the Board to determine "whether Atlantic exercised sufficient due diligence to verify" that the insurance coverage evidenced by the COI extended to Delaware.[25]

A remand hearing was held on May 1, 2018. The Board issued its second decision in this matter on August 2, 2018, finding that Atlantic "failed to verify that

---

[22] *Id.*

[23] *Trujillo*, at *5.

[24] *Id.*

[25] *Id.* Trujillo filed a motion for reargument, contending that remand was unnecessary because the Court's finding that the COI was not facially valid was case-dispositive. *Trujillo v. Atl. Bldg. Assocs.*, 2017 WL 3738407, at *2 (Del. Super. Aug. 29, 2017). Specifically, Trujillo asserted that since the COI provided to Atlantic did not certify Delaware coverage, Atlantic never fulfilled its obligation to obtain a "certification of insurance in force under this chapter." *Id.* The Court rejected Trujillo's assertion that it wrote a "due diligence" exception into § 2311(a)(5). The Court stated that the COI was ambiguous on its face as to the territorial information, and thus it was incumbent on Atlantic to verify that information. *Id.* Whether Atlantic did so, the Court stated, was a factual determination properly within the purview of the IAB. *Id.*

WVM's worker's compensation insurance was actually in force in Delaware," and that therefore Atlantic is liable to insure Trujillo's injuries.[26] This appeal followed.

## II. PARTIES' CONTENTIONS

The parties do not dispute that the question posed by the Court for the IAB to consider on remand was whether Atlantic exercised due diligence in verifying that WVM's workers' compensation insurance coverage applied to Delaware workers and Delaware work-related accidents. Atlantic contends that the IAB, on remand, failed to perform the "due diligence" analysis, but rather applied a strict liability standard by determining whether Atlantic *actually* "verified" if WVM had Delaware coverage.[27] Atlantic asserts that the IAB's August 2, 2018 decision should for that reason be reversed and remanded for it to reconsider this case under the "due diligence" standard.[28]

Trujillo acknowledges that the IAB did not use the term "due diligence" in its August 2, 2018 opinion.[29] However, Trujillo contends that the failure to use that specific term does not, in and of itself, indicate that the IAB disregarded the Court's directive to determine whether Atlantic exercised due diligence.[30] Rather, Trujillo asserts that the IAB "conducted an extensive analysis and thorough review" of

---

[26] Second IAB Decision at 12.
[27] Opening Br. at 7.
[28] *Id.* at 30.
[29] Appellee's Answering Brief at 14 ("Answering Br.") (Trans. ID. 62632567).
[30] *Id.* at 16.

6

Atlantic's efforts to verify that WVM's insurance extended to Delaware,[31] which, Trujillo argues, is "the very question this Court asked the [IAB] to address."[32] In short, Trujillo contends that the IAB *did* perform a "due diligence" analysis in its remand decision, even though it did not expressly label its analysis as such.

## III. STANDARD OF REVIEW

This Court has appellate jurisdiction over IAB decisions under 29 *Del. C.* § 10142. On appeal, the Court's review is limited to determining whether the Board's decision is "supported by substantial evidence" and "free from legal error."[33] When the issue raised on appeal from a Board decision involves exclusively a question of law, the Court's review is *de novo*.[34]

## IV. LEGAL ANALYSIS

At the outset of its remand decision, the Board reiterated the Court's June 7, 2017 holding that the Board "applied an incorrect legal standard" and "erred in concluding that Atlantic had acted in good faith and satisfied any due diligence requirement in conjunction with section 2311(a)(5)."[35] But this seems to be the only occasion where the Board in that decision used the term "due diligence" in relation

---

[31] *Id.* at 14.
[32] *Id.* at 16.
[33] *Vincent v. E. Shore Mkts.*, 970 A.2d 160, 163 (Del. 2009) (internal citations omitted).
[34] *Id.*
[35] Second IAB Decision at 3. The Court notes that, in its June 7, 2017 opinion, it only held that the IAB erred in concluding that the COI was facially valid. The Court did not address any of the IAB's due diligence analysis in that opinion.

to the legal analysis it was instructed to conduct on remand. Other than that one single use, the Board consistently phrased its task on remand as whether Atlantic "verified" that WVM's workers' compensation insurance extended to Delaware.[36] Thus, the question that the Board appeared to have addressed on remand—whether Atlantic "verified" that WVM's insurance was in force in Delaware—is not identical to the question it was asked by this Court to resolve— whether Atlantic exercised due diligence in verifying that information.

Trujillo argues that, while not labeled correctly, the Board in fact *did* conduct a due diligence analysis, as evidenced by a large portion of its remand decision devoted to discussing Atlantic's verification process.

The Court notes that the Board conducted an extensive review of the efforts made by Atlantic to verify that the insurance coverage evidenced by the COI extended to Delaware. The Board first summarized in detail the evidence it had received regarding this issue, specifically Atlantic's representative, Linda Garufi's testimony regarding the actions she had taken after receiving the COI produced by WVM's insurance broker.[37] The Board thereafter analyzed Atlantic's verification process. It noted that, since the territorial information was not evident from the COI,

---

[36] *See id.* at 4 ("Atlantic was then required to verify . . . ."), 11 ("The Court has directed the Board . . . to make a factual determination as to whether Atlantic verified . . . ."), 12 ("The Board finds that . . . Atlantic failed to verify . . . ."), 17 ("The Board simply was not convinced that Atlantic verified . . . .").

[37] *Id.* at 4–9.

Atlantic "needed to take additional steps to confirm that WVM was insured for Delaware work accidents."[38] It then found that the purported additional step taken by Atlantic—receipt of WVM's Delaware business license—was not "sufficient to satisfy [§]2311(a)(5)."[39] Specifically, it found that Atlantic may not presume Delaware coverage simply based on the presence of a Delaware business license.[40] The Board further noted that it was not convinced by Atlantic's reasoning why additional verifying efforts were not necessary, instead noting that there was "always an option" for Atlantic to directly contact WVM's insurance carrier or broker.[41]

Notwithstanding the additional evidence and testimony that the Board analyzed relating to Atlantic's verification process, this case still needs to be remanded for the Board to clarify whether its analysis was conducted under the "due diligence" standard as previously instructed by the Court. One reason is that the Board did not use the term "due diligence" in its remand decision.[42] A second

[38] *Id.* at 13.

[39] *Id.*

[40] *Id.* at 14.

[41] *Id.* at 16. Atlantic contends that the Board actually applied a strict liability standard in determining Atlantic's compliance with § 2311(a)(5). With this the Court does not agree. The Board did not find Atlantic liable for Trujillo's injury solely based on the fact that WVM's insurance did not cover Trujillo's incident. And as discussed above, the Board took into consideration Atlantic's efforts in verifying Delaware coverage.

[42] There was a lengthy exchange between the Hearing Officer and Atlantic's attorney at the outset of the remand hearing with regard to the question to be addressed on remand. *See* R. on Appeal, Tab 10, Transcript of May 1, 2018 IAB Hearing at 8–22. Some of the comments made by the Hearing Officer during that exchange suggest that the Board may have misunderstood the Court's remand instruction. *See, e.g., id.* at 8 (The Hearing Officer stated "[I] think the bottom line is . . .did [Atlantic] assure that WVM had coverage in Delaware?").

remand is also supported by the fact that the Board, in its first decision, found that Atlantic "acted with . . . proper due diligence" in exercising its duties under § 2311(a)(5), which appears to be inconsistent with its finding in the remand decision.[43] Although not necessarily self-contradictory,[44] the Court finds that the inconsistent findings of the Board caused confusion among the parties. It is therefore necessary that the Board clarify this issue. It is undisputed that Atlantic had a duty to verify whether WVM had Delaware workers' compensation coverage. It is also undisputed that the duty is to be evaluated under a "due diligence" standard, namely, "the care that a reasonable person exercises to avoid harm to other persons or their property."[45] Hence, the sole issue to be addressed is whether Atlantic exercised the care that a reasonable person would exercise in verifying that WVM's workers'

---

[43] *See* First IAB Decision at 19. The Board came to this conclusion based on the same set of facts as provided here. Atlantic contends that the Board's original finding of due diligence, not disturbed by the Court in its June 7, 2017 opinion, was made under the correct legal standard. Atlantic further argues that the Board's contrary finding on remand must have been the result of applying a wrong legal standard.

[44] In its first decision, the Board reached an incorrect conclusion that the COI furnished to Atlantic was facially valid. When a COI is valid on its face, the contractor has a duty to inquire into the validity of the subcontractor's insurance coverage only in certain "narrow circumstances" where the contractor "knows or has reason to believe [that] the certification is false." *Cordero*, 56 A.3d at 1037–38. In short, with a facially valid COI, the contractor is obligated to inquire only into those "red flags" that should have caused it to research further. It appears that, because of this incorrect presumption of a facially valid COI, the Board, in its first decision, focused its analysis on whether Atlantic ignored any "red flags" and concluded that Atlantic did not. *First IAB Decision* at 20–22. On remand, by contrast, there was a Court ruling that the COI was facially invalid. Therefore, the Board's analysis should not have been limited to whether Atlantic ignored any obvious red flags, but whether Atlantic conducted a full-fledged due diligence investigation in verifying the territorial information that was ambiguous from the face of the COI. In this sense, the Board could have made two apparently inconsistent, but reconcilable, findings.

[45] *Pepsi Bottling Grp. v. Meadow*, 2010 WL 1068196, at *5 n.24 (Del. Super. Mar. 23, 2010) (citing Black's Law Dictionary (8th Ed. 2004)).

10

compensation coverage was in force in Delaware. As stated by the Court in its 2017 opinion, this is a factual question properly within the purview of the Board to determine.[46]

## V. CONCLUSION

For the reasons stated above, the Board's August 2, 2018 decision is REVERSED and REMANDED to determine whether Atlantic has fulfilled its "due diligence" obligation.

**IT IS SO ORDERED.**

Sheldon K. Rennie, Judge

---

[46] It may be that no further evidence is necessary, and the Board need only make a clear written determination based on the facts in the record, of whether Atlantic acted with due diligence in its efforts to verify that WVM's workers' compensation coverage was in force in Delaware.