J-A02036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT R. WILSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARILYN A. SENZARINO, A/K/A | : | No. 950 WDA 2025 |
| MARILYN A. WILSON, A/K/A | : | |
| MARILYN WILSON | : | |

Appeal from the Order Entered July 8, 2025
In the Court of Common Pleas of Crawford County Civil Division at No(s):
F.D. 2024-103

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: May 15, 2026**

Robert R. Wilson ("Wilson") appeals from the order entered by the Crawford County Court of Common Pleas ("trial court") dismissing his action in divorce against Marilyn Senzarino ("Senzarino") based upon its conclusion that Wilson failed to establish that a common law marriage existed in the State of Ohio prior to October 10, 1991.[1]  We affirm.

The record reflects that on April 8, 2024, Wilson filed a complaint in divorce in the trial court, requesting a divorce from Senzarino based upon his claim of a common law marriage that allegedly commenced on February 15, 1990.  After Senzarino filed preliminary objections, the trial court ordered

---

[1] Section 3105.12(B) of the Ohio Revised Code prohibits common law marriages on and after October 10, 1991.  Ohio Rev. Code Ann. § 3105.12(B).

Wilson to file an amended complaint to specify the jurisdiction where he alleged the common law marriage existed. The amended complaint alleged the common law marriage occurred in Ohio, but on a different date: June 28, 1991. Senzarino denied the existence of a common law marriage.

On April 15, 2025, the trial court held an evidentiary hearing to determine whether a common law marriage in Ohio existed between the parties. Wilson testified on his own behalf, along with his nephew and sister, and he called Senzarino as on cross. Senzarino presented the testimony of her son and niece. The trial court admitted several documentary exhibits presented by Wilson and Senzarino.

The trial court made the following findings of fact:

> Wilson and Senzarino met at Ladbroke's in New Castle[, Pennsylvania] in early 1991, began dating shortly thereafter, and took a vacation to Florida in May of that year. While Wilson characterized the trip as a honeymoon, Senzarino credibly testified that she did not view it as such and that there was no agreement or discussion of marriage at the time. Wilson contends that he moved into Senzarino's home in Struthers, Ohio in May 1991, but Senzarino credibly testified, as did her son, that he did not move in until May 1992.
>
> Wilson's testimony and the evidence of record, even when viewed in the light most favorable to him, suggest multiple, inconsistent dates as the alleged date of marriage, such that the [trial c]ourt could not deduce a specific date on which a marriage was ever alleged to have occurred.[2] Senzarino, by contrast, testified unequivocally that she was never married to Wilson on any of the dates suggested by Wilson, or at any time. In 1991,

---

[2] ***See*** N.T., 4/15/2025, at 9 (June 28, 1991), 23 (June 26, 1991); Amended Compl., 8/13/2024, ¶ 18 (June 28, 1991); Compl., 4/8/2024, ¶ 5 (February 15, 1990).

Wilson purchased a ring for Senzarino, which he testified he considered to be an engagement ring. Senzarino testified that the ring was simply a gift, that no discussion of marriage accompanied the gift, and that Wilson never gave her a wedding band. Neither party testified to any understanding or discussion of Ohio's common law marriage doctrine in 1991, nor was there any testimony that they were aware that the State [of Ohio] abolish[ed] common law marriage as of October 10, 1991.

Senzarino credibly testified that she and Wilson never discussed marriage—common law or otherwise—at any point during their relationship. The subject was simply never raised. There was no exchange of vows, no mutual declarations of marital intent, and not even casual conversation suggesting a shared understanding that they considered themselves husband and wife. According to Senzarino, the idea of suggesting a common law marriage existed developed only years later, when Wilson was in need of health insurance and was informed that spousal coverage based on common law marriage would require a marriage existing prior to October [10,] 1991. Senzarino testified that this claim was entirely retrospective, motivated by convenience, and unrelated to any mutual agreement or understanding during the relationship, and certainly never existed prior to October [10,] 1991.

Wilson testified that he referred to Senzarino as his wife in social settings. Senzarino, whose testimony the [trial c]ourt finds credible, stated that Wilson rarely introduced her at all—and when he did, he never identified her as his wife. She herself always introduced Wilson simply as "Rob." This testimony was corroborated by multiple witnesses, including family members from both sides. Wilson's sister and nephew, along with Senzarino's son and niece, each testified that they never heard the parties refer to one another as husband and wife and did not understand them to be married. The record is devoid of any credible testimony affirmatively supporting Wilson's claim that the parties held themselves out as married.

From 1991 through 2000, the parties filed individual tax returns listing their status as single. Senzarino testified that this reflected the true nature of their relationship at the time—they were not married and did not consider themselves to be. In 2001, they began filing joint [tax] returns, which Senzarino explained was done at Wilson's request to obtain business-related tax

advantages. This change occurred well after Ohio abolished common law marriage and was based on financial considerations, not any shift in the parties' understanding of their historical or current relationship.

Senzarino remained employed at Cafaro Hospital until its closure in 2000. Beginning in 1993, she paid for a private health insurance policy for Wilson, but he was not added to her employer-sponsored plan during her tenure there. In 2002, after Senzarino began working at the public library, she listed Wilson as her spouse on employment and insurance forms. She testified that she was afraid to refuse and did so solely at Wilson's instruction. Senzarino further credibly testified that she only represented the parties as married when doing so advanced a specific financial or insurance-related benefit for Wilson and not because they were married.

In short, Wilson does not point to any conduct or mutual understanding indicative of a marital relationship. Rather, he appears to rely on selective facts that he now characterizes in a way that retroactively supports his claim of common law marriage. These facts, particularly when considered alongside the credible and consistent testimony of Senzarino and others, do not support a factual finding that a common law marriage existed prior to October 10, 1991.

Trial Court Memorandum and Order, 7/8/2025, at 1-2 (party designations altered); *see also* Trial Court Opinion, 8/28/2025, at 2, 6 (adopting the July 8, 2025 Memorandum and Order in its entirety). This timely appeal followed.

Wilson presents three questions for our review:

[1.] Whether the trial court committed an error of law and an abuse of discretion in not finding a common[]law marriage existed between the parties in the State of Ohio prior to October 10, 1991?

[2.] Whether the trial court committed an error of law and abused its discretion in disregarding documentation authored by [Senzarino] twenty-two years prior to [Wilson's] filing of his Complaint for Divorce in which

[Senzarino] stated the marriage date of the parties as June 18, 1991?

[3.]    Whether the trial court[] erred as a matter of law and abused its discretion by its finding that [Senzarino's] testimony at trial was more credible, when she admitted to credit card fraud, health insurance fraud, tax fraud, and bank fraud to support her position that a common law marriage was not entered into prior to October 10, 1991?

Wilson's Brief at 11, 13-14, 16.

Our standard of review in a declaratory judgment action is

limited to determining whether the trial court clearly abused its discretion or committed an error of law.  If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court.  The application of the law, however, is always subject to our review.

*In re Estate of Carter*, 159 A.3d 970, 974 (Pa. Super. 2017) (citations omitted).[3]  "It is not the role of an appellate court to pass on the credibility of

_____

[3]  "As a general rule, the law of the chosen forum governs all procedural matters." *Sheard v. J.J. DeLuca Co., Inc.*, 92 A.3d 68, 76 (Pa. Super. 2014) (citation omitted).  "[P]rocedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced."  *Id.* (quotation marks and citation omitted).  Thus, although the substantive issue pertains to whether a divorce existed under Ohio law, Pennsylvania procedural law applies.

In Pennsylvania, "[t]he proper procedure for obtaining legal recognition of a common law marriage is the filing of a declaratory judgment action." *Estate of Carter*, 159 A.3d at 974 (citation omitted).

When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or

*(Footnote Continued Next Page)*

witnesses or to act as the trier of fact, and we will not substitute our judgment for that of the fact-finder." **Bell v. Ferraro**, 849 A.2d 1233, 1235 (Pa. Super. 2004) (citation omitted). The trial court, as factfinder, determines the credibility of witnesses and its conclusions of law based on those determinations cannot be disturbed absent an abuse of discretion. **Staudenmayer v. Staudenmayer**, 714 A.2d 1016, 1022 (Pa. 1998).

Wilson's issues are interrelated and we therefore address them together. At base, Wilson asks us to reweigh the record evidence and resolve contradictory testimony in his favor. **See generally** Wilson's Brief at 27-72. He maintains that he proved the elements of an Ohio common law marriage by clear and convincing evidence, pointing us to his testimony about when he moved into Senzarino's home; their cohabitation for over three decades; a trip the parties took to Florida, which he characterized as their honeymoon; his purchase of a diamond ring, which he characterized as an engagement ring; the circumstances surrounding his addition to the group health insurance

---

invalid by decree of the court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned.

23 Pa.C.S. § 3306. Wilson commenced this action by filing a complaint in divorce. Because the resolution of the threshold issue of the parties' marital status was necessary prior to ruling upon Wilson's divorce action, the trial court held an evidentiary hearing to decide the issue. **See** Trial Court Opinion, 8/28/2025, at 1. The issues Wilson raises on appeal all relate to the trial court's determination that a common law marriage did not exist. Accordingly, we review Wilson's issues under the same standard of review as declaratory judgment actions brought under section 3306.

- 6 -

policies provided by Senzarino's former employers; their annual celebration of June 28, 1991 as their anniversary date; a 2007 deed and mortgage on their Pennsylvania property, both of which identified the parties as married; having to "lay low" about their marriage because Senzarino's former husband might "become upset and seek revenge;" and Senzarino's use of his surname. *Id.* at 30-31, 38-43, 46-48.

Wilson further contends the trial court erroneously disregarded Senzarino's employer paperwork from 2002, wherein she indicated on two forms that the parties were married on June 18, 1991. *Id.* at 31, 34-36, 40, 43, 50-51, 53-56. He argues that the trial court should have given more weight to this documentary evidence than Senzarino's "self-serving" testimony. *Id.* at 34, 51, 56. Finally, Wilson argues that the trial court improperly credited Senzarino's testimony. *Id.* at 35, 58-71. He contends that the trial court put "its seemingly blind trust" in Senzarino's version of events and fell for her testimony "hook, line, and sinker." *Id.* at 58, 65. He argues the trial court should not have believed her because she consequently admitted to credit card, health insurance, tax, and bank fraud when she designated herself as married to those institutions. *Id.* at 35, 58-59, 63-64, 69-71.

"Pennsylvania follows the general rule that the validity of a marriage is determined by the law of the place where it was contracted." *Commonwealth v. Case*, 189 A.2d 756, 759-60 (Pa. Super. 1963) (citations

omitted). Because the common law marriage here is alleged to have occurred in Ohio, we determine its validity by the law of that state.[4]

In Ohio, a common law marriage is the marital joinder of two people without the benefit of formal papers or procedures. *Shavel v. Shavel*, 233 N.E.3d 123, 128 (Ohio Ct. App. 2023). As noted above, common law marriages occurring after October 10, 1991 are prohibited in Ohio. Ohio Rev. Code Ann. § 3105.12(B)(1). However, "[c]ommon law marriages that occurred prior to that date continue to be recognized and remain valid unless terminated by death, divorce, dissolution of marriage, or annulment." *Estate of Everhart v. Everhart*, 14 N.E.3d 438, 446 (Ohio Ct. App. 2014) (citation omitted); *see also* Ohio Rev. Code Ann. § 3105.12(B)(2), (3)(a)-(b). Common law marriages "are not favored in Ohio, but have long been recognized as lawful if certain elements or circumstances are found to be present." *Shavel*, 233 N.E.3d at 128 (quotation marks and citation omitted).

> A party seeking to establish a common law marriage must show: (1) an agreement of marriage in praesenti, (2) cohabitation as husband and wife, and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community.
>
> The party seeking to establish a common[]law marriage bears the burden of establishing each of its elements by clear and convincing evidence. Clear and convincing evidence is that degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In deciding whether a party has presented clear and convincing

---

[4] The parties agree Ohio law governs the issue of whether a common law marriage existed. *See* Trial Court Opinion, 8/28/2025, at 1.

evidence of a common[]law marriage, the weight to be given the evidence and the credibility of witnesses is a determination to be made by the trier of fact.

***Everhart***, 14 N.E.3d at 446-47 (quotation marks, brackets, and citations omitted).

The fundamental requirement to establish the existence of a common law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife. The absence of an agreement between the parties precludes the establishment of such a relationship.

The contract of marriage in praesenti may be proven either by way of direct evidence which establishes the agreement, or by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside.

Where there is no direct proof in reference to the formation of the contract of marriage in praesenti, testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabitating as man and wife. In contrast, where there is direct evidence of the formation of the contract of marriage in praesenti, evidence of cohabitation and reputation of living together should be given even greater weight to further strengthen the inference of marriage.

***Shavel***, 233 N.E.3d at 128 (quotation marks and citations omitted).

As stated above, the trial court heard testimony from the parties and four other witnesses and considered multiple documentary exhibits. As the trial court observed, this case "turned on the issue of credibility." Trial Court Opinion, 8/28/2025, at 2. It found Wilson's "testimony lacked credibility both within itself and upon consideration of the other testimony that the [trial c]ourt

found credible" and noted that some of his testimony "was inconsistent with other witnesses that he called." *Id.* On the other hand, it found Senzarino's testimony credible. *Id.* Based upon these determinations, the trial court analyzed whether the parties entered into an Ohio common law marriage as follows:

In this case, Wilson has not met his burden. The record does not contain clear and convincing evidence of a present agreement to marry prior to October 10, 1991. Wilson described a May 1991 Florida vacation as a "honeymoon," although the trip occurred before the various dates he later identified as their marriage. He also testified to giving Senzarino a ring, but did so after those dates, and there is no credible evidence linking the gift to any contemporaneous discussion or agreement to marry. While these events may reflect aspects of the parties' relationship, they fall short of establishing a clear, mutual agreement to enter into marriage.

In contrast, Ms. Senzarino offered clear and credible testimony that no agreement to marry ever occurred. She testified that the subject of marriage was never discussed during the relevant time period and that Wilson did not even move into her home until May 1992, well after common law marriage had been abolished in Ohio. Her testimony was supported by other witnesses and documentary evidence. Accordingly, the [trial c]ourt finds not only that Wilson failed to meet his burden, but also, in the alternative, that Senzarino has affirmatively established that no common law marriage existed.

The evidence does not establish that the parties held themselves out as married or were known as a married couple within their, or frankly any, community. Multiple witnesses, including family members of both parties, testified that they had never heard Wilson or Senzarino refer to one another as husband or wife. No witness[, other than Wilson,] testified that they believed the parties were married during the relevant period.

While Wilson has pointed to later tax filings, health insurance forms, and deed-related documents, these arise well after [] October 1991 and often reflect isolated, benefit-driven

- 10 -

decisions rather than genuine representations of marital status as of October 1991. Such materials "have little value" in proving a common law marriage that must have been established before a legally significant date. **Shavel**[, 233 N.E.3d at 131]. Furthermore, it is not lost on the [trial c]ourt that the parties, on at least similar documents, [identified themselves as] "single" after 1991.

The [trial c]ourt does not question that the parties shared a longstanding relationship and, at times, lived together. However, the credible evidence indicates that their cohabitation did not begin until after Ohio abolished common law marriage. And while later documents such as real estate records or health insurance paperwork may carry some evidentiary weight, they do not overcome the consistent, credible testimony showing that there was no mutual agreement to marry and no holding out as husband and wife during the relevant time period. Representations made years later—particularly when motivated by practical or financial considerations in this case—do not rise to the level of clear and convincing evidence.

Therefore, the [trial c]ourt concludes that Wilson has not met his burden to establish a valid common law marriage under Ohio law. The evidence does not demonstrate a present agreement to marry, fails to establish cohabitation prior to October 10, 1991, and does not show a consistent holding out or community reputation as a married couple. Moreover, the [trial c]ourt notes, based upon the nature, quality, and quantity of the evidence, and the logical inferences, that Senzarino has affirmatively shown that no common law marriage ever existed between the parties.

Trial Court Memorandum and Order, 7/8/2025, at 3-4 (party designations altered).

The trial court specifically addressed Senzarino's 2002 employer paperwork indicating the parties were married on June 18, 1991, stating:

What is clear is that the document to obtain health insurance was not executed until well after the Ohio deadline [of October 10, 1991,] and while it did reflect an earlier date of common law marriage[,] there were other documents that reflected different

- 11 -

dates of common law marriage, some predating the actual date where the parties even met. Senzarino explained that while she knowingly executed those documents and signed those affirmations, she did so under fear and concern on her own part and felt compelled to do so at the direction of Wilson. The only times where it appears there was discussion of common law marriage on any documents[ or] records, or even discussions, was when it was a benefit to Wilson for health insurance, taxes[,] or otherwise. The [trial c]ourt notably concluded that these after-the-fact assertions of common law marriage were not important from a conclusionary perspective because their credibility was sufficiently lacking[, …] there was motivation behind their execution that could be understood[,] and finally because they were only done[] well after the Ohio deadline.

Therefore, the documents presented[,] while factored into the [trial c]ourt's analysis of credibility of the witnesses and the testimony[,] evidence[,] and logical inferences that flowed, did not undermine the credibility of Senzarino or the witnesses that testified consistently with her assertions that there was never a common law marriage intended[.]

Trial Court Opinion, 8/28/2025, at 3-4 (party designations altered). Although the trial court recognized that "there may well be issues with that action on [the] part of Wilson, Senzarino[,] or both," based upon their false statements of marriage, "the fact that they did represent the common law marriage on forms much later does not create an existing common law marriage approximately a decade earlier in light of the overwhelming evidence to the contrary." *Id.* at 5 (party designations altered).

The record plainly reflects, as stated by the trial court, that the parties provided vastly different accounts of their relationship. As to the first element of an Ohio common law marriage, requiring evidence of a present, mutual agreement to be married, Wilson testified that he had such an agreement with

Senzarino, but she categorically denied it. N.T., 4/15/2024, at 8, 15, 22, 60-61, 74, 86, 118. Wilson testified that he bought her an engagement ring in July 1991 (which was after his claimed marriage date), whereas Senzarino testified that it was "just a ring" without any discussion of being engaged or married. *Id.* at 11, 33, 68, 88-89. She did not consider the ring to be "anything significant" and did not remember mentioning it to anyone. *Id.* at 89. In addition, Wilson never purchased a wedding band. *Id.* at 33. Wilson claimed they honeymooned in May 1991 (which was before his claimed marriage date), while Senzarino said it was a vacation, not a honeymoon. *Id.* at 12, 34, 64.

Second, regarding the cohabitation element, testimony presented established that the parties lived together but each side gave conflicting testimony as to when Wilson moved into Senzarino's house. Wilson indicated he moved into her house in May 1991, while Senzarino and her son testified that Wilson did not move in until May 1992, after Ohio prohibited common law marriage. *Id.* at 6, 64, 87, 123-24.

Finally, with regard to the third element—holding themselves out as married in the community—Wilson testified that, starting around 2000 (again, well after Ohio banned common law marriages), he introduced her as his wife at parties, while Senzarino and all other witnesses (including those called by Wilson) denied that the parties held themselves out as married. *See id.* at 16, 38, 43, 48, 89-90, 101, 128, 139-40. When asked on direct examination

who knew about his marriage to Senzarino, Wilson replied that, among others, his sister and nephew did; however, at the hearing, his sister and nephew denied ever hearing Wilson and Senzarino referred to as husband and wife. *Id.* at 38, 43, 48. Further, Wilson admitted that he and Senzarino did not hold themselves out to the community as married for "for the first years there in the 90s" and instead kept it as "kind of a low profile" and "a secret to the world." *Id.* at 9-10. Although Senzarino's employer forms and the deed to their Pennsylvania property did state they were married, that evidence was from 2002 or later and Senzarino testified that they represented themselves as married only when it was financially convenient or beneficial, such as when Wilson needed health insurance. *Id.* at 109, 118, Pl.'s Exs. A-B, D, Def.'s Ex. 7. As the trial court correctly determined, these documents have little value in proving the existence of a common law marriage in Ohio. *See Shavel*, 233 N.E.3d at 131 (stating that documents dated from 1994 to 2004 "have little value" in determining whether a common law marriage existed because "they do not demonstrate what is required: that the parties engaged in a common law marriage **before** October 10, 1991") (emphasis in original).

The trial court, sitting as fact finder, was in the best position to weigh and assess the credibility of the conflicting evidence presented by the parties and it specifically determined that Senzarino's testimony was more credible. Trial Court Opinion, 8/28/2025, at 2; *see also* Trial Court Memorandum and Order, 7/8/2025, at 1-3. Because the trial court's findings of fact are

supported by the record, we may not substitute our judgment. **See Estate of Carter**, 159 A.3d at 974; **Bell**, 849 A.2d at 1235. Accordingly, we discern no abuse of discretion by the trial court in deciding that Wilson failed to clearly and convincingly establish the existence of an Ohio common law marriage between the parties. **See Carter**, 159 A.3d at 974; **Staudenmayer**, 714 A.2d at 1022.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/15/2026